**IN THE SUPERIOR COURT OF WASHINGTON
IN AND FOR KING COUNTY**

| | |
|---|---|
| ANDREW BELL and BECKY BELL, husband and wife;<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>THE BOEING COMPANY, a Delaware corporation licensed as a Washington foreign corporation,<br><br>　　　　　Defendants. | NO:<br><br>COMPLAINT FOR DAMAGES |

COME NOW the Plaintiffs, Andrew and Becky Bell, by and through the undersigned attorney of record, and alleges and states as follows:

## I. PARTIES AND JURISDICTION

A. Plaintiffs, Andrew Bell and Becky Bell are husband and wife and are currently residents of North Carolina. At all times relevant to this lawsuit, Andrew Bell was a resident of North Carolina and also resided in the State of Washington.

B. At all times relevant hereto, the defendant, The Boeing Company (hereinafter "TBC") was a for profit Delaware corporation licensed to conduct business in the State of Washington as a foreign corporation. TBC has its principal place of business in Seattle, Washington and Chicago, Illinois.

.

COMPLAINT FOR DAMAGES - 1

THE STEPHENS LAW FIRM
424 29TH St. NE Suite D
Puyallup WA 98372
253.863.2525

C. All acts complained of herein occurred in King County, Washington.

D. Venue is proper in the King County Superior Court.

E. This Court has subject matter and in persona jurisdiction.

## II. FACTS GIVING RISE TO PLAINTIFF'S CLAIMS

A. Andrew Bell was approached by a recruiter, employed by a vendor for TBC, about applying for a position with TBC. During his initial contact with the recruiter, Andrew alerted the recruiter that he had a sleep disorder that made it impossible for him to work on the graveyard shift (aka 3rd shift). The recruiter assured Andrew that his sleep disorder would not disqualify him from the position and, if he was offered employment, TBC would not place him on 3rd shift. Andrew, who at the time was working another employer, felt that in light of TBC's willingness to accommodate his sleep disorder and the benefits package offered, that a position with TBC would provide his family with financial security.

B. On or about October 13, 2017, Andrew received an offer of employment from TBC. The offer was sent by email from jobs@jobs.careersatboeing.com. In that email, Andrew was informed that TBC was extending "an offer of employment for the position of Machine Repair Mechanic A (17000156608). The email provided instructions, with an associated hyperlink, outlining the steps to be taken to accept the offer.

C. On or about November 3, 2017, Andrew received a letter from TBC that outlined, in greater detail, the terms of the contingent offer of employment. The contingent offer of employment indicated that Andrew would be working with Boeing Commercial Airplanes in Auburn Washington. It also stated, "You will be working in the 17-07 building on the 2nd shift." The letter continued by outlining his rate of pay, relocation assistance and the contingencies that had to be satisfied before the he would be considered an employee of TBC. The November 3, 2017 letter confirmed that Andrew would not be required to work 3rd shift which was consistent with what had been represented by his recruiter.

COMPLAINT FOR DAMAGES - 2

THE STEPHENS LAW FIRM
424 29TH St. NE Suite D
Puyallup WA 98372
253.863.2525

D. Andrew accepted the job offer and commenced the process of satisfying all the contingencies outlined in the November 3, 2017 letter. In addition, he arranged to move from his home in North Carolina to Auburn, King County, Washington. TBC, as an incentive to attract employees, provided relocation assistance in the approximate sum of $10,438.62. According to TBC's policy, new hires that are provided relocation assistance must remain in the employ of TBC for a period of one (1) year.  New hires that voluntary resign or who are terminated with cause are required to repay relocation assistance.

C. On multiple occasions between his receipt of this offer of employment and his official start date (April 20, 2018), Andrew spoke with representatives of TBC about his sleep disorder and that he was medically prohibited from working the 3rd shift. During each interaction, he was assured that he would not have to work on the 3rd shift and that his disability would be accommodated.

D.  As soon as he completed his orientation, Andrew commenced work at TBC's Auburn facility. When he started, his supervisor, Jim Watterson, told Andrew that he would be required to work 3rd shift. In response, Andrew told Waterson that he was hired on the proviso that he would not work the 3rd shift and, accordingly, would not be working that shift. On or about April 30, 2018, Andrew met with a representative of TBC Human Resources. He reported that he was being forced to work the 3rd shift in contradiction to the express terms of the job offer he accepted. The human resources person confirmed that Andrew was hired with the express understanding that he would be working the 2nd shift and not the 3rd shift.

E. On or about May 11, 2018, supervisor Watterson spoke with Andrew and Andrew's union steward. At that time, he instructed Andrew to sign a document consenting to a transfer to the 3rd shift. Andrew refused to sign the document.

F. On or about May 14, 2018, Andrew went to see the onsite nurse to get a note that would instruct TBC management that he was not to work the 3rd shift. He was told to schedule an appointment with the nurse. When he appeared for the appointment, he was told to bring the nurse a note from a physician.

COMPLAINT FOR DAMAGES - 3

G. On or about June 17, 2018, Andrew met with his physician, Dr. Kardashev. After performing an examination of Andrew, Dr. Kardashev concluded that Andrew should not work the 3rd shift and gave him a note to take to TBC. Andrew took the physician's note restricting him from the 3rd shift to the nurse he previously met. Upon arriving, he learned she no longer worked for TBC. Her replacement told Andrew the physician's note was not adequate and that he would be required to have a sleep study in addition to the physician's note.

H. Shortly after presenting the physician's note to the replacement nurse, Andrew was summoned to meet with several Boeing managers. He was told to sign a document accepting a transfer to the 3rd shift. It was apparent to Andrew that his failure to sign the transfer document would lead to his termination. Although he told his management that he accepted the position with TBC only after confirming that he would not have to work the 3rd shift due to his medical conditions, his management stated that TBC expected him to work the 3rd shift. Andrew would later learn from coworkers that TBC engages in a pattern and practice of making promises in the hiring process that it later ignores when the employee is hired.

I. On or about June 25, 2018, Andrew met with Tom Klotz to discuss his request for workplace accommodation. Mr. Klotz advised Andrew that he would be kept on 3rd shift for approximately 30 days after which he would be placed on an unpaid medical leave of absence.

J. Andrew was placed on an unpaid medical leave of absence on or about July 27, 2018. Andrew did not have an income and had no idea if TBC would bring him back from his unpaid medical leave of absence. As a result, he packed his belongings and move back to North Carolina.  After returning to North Carolina, he attempted to change his mailing address, but the TBC program would only allow him to change his address if he first received a confirming letter to his Washington address. Since that was impossible to do, he no longer maintained communication with TBC.  TBC, retaliation for having filed the request for accommodation, subsequently threatened to

COMPLAINT FOR DAMAGES - 4

sue Andrew to recover his moving expenses even though his departure from TBC was the product of TBC's failure to adhere to its promises made during the hiring process.

### III. CAUSES OF ACTION

A. <u>Re-allegation</u>: For purposes of this section, Plaintiff realleges all allegations contained in sections I and II above and further alleges and states as follows:

B. <u>First Cause of Action: Wrongful Termination in Violation of Public Policy</u>

During Andrew's employment at TBC, he requested accommodation for a known disability but was denied accommodation even when the request came in the form of a doctor's note. Andrew was actually and constructive discharged when he was let go and placed on an indefinite unpaid medical leave of absence when TBC had other positions available aligned with Andrew's skillset. As a direct proximate and legal result of TBC's actions, Andrew sustained economic and not economic damage in an amount that will be proven at trial, together with pre and post judgment interest at the legal rate, the grossing up of any damages award to account for tax consequences and Plaintiff's attorney's fees and costs.

C. Second Cause of Action: Failure to Accommodate. Defendant TBC and its management were aware of Andrew's disability and that a workplace accommodation was required. TBC and its management offered Andrew a position expressly promising him that he would work the 2nd shift and not the 3rd shift, which was consistent with the requirements of his disability. It is alleged and believed that Defendants knew that Andrew would not be assigned to the 2nd shift at the time Defendants extended their job offer even though Defendants and their agents were aware that Andrew's disability required accommodation. Defendants failed to accommodate Andrew's disability and failed to engage in the interactive process required under Washington State law. As a direct proximate and legal result of TBC's actions, Andrew sustained economic and not economic damage in an amount that will be proven at trial, together with pre and post judgment interest at the legal rate, the

grossing up of any damages award to account for tax consequences and Plaintiff's attorney's fees and costs.

D. <u>Third Cause of Action: Disability Discrimination in violation of RCW 49.60, et. seq.</u>  Defendant TBC and its management were aware of Andrew's disability and that a workplace accommodation was required. TBC and its management offered Andrew a position expressly promising him that he would work the 2nd shift and not the 3rd shift, which was consistent with the requirements of his disability. It is alleged and believed that Defendants knew that Andrew would not be assigned to the 2nd shift at the time Defendants extended their job offer even though Defendants and their agents were aware that Andrew's disability required accommodation. Defendants discriminated against Andrew based on his disability and/or perceptions of his disability. As a direct proximate and legal result of TBC's actions, Andrew sustained economic and not economic damage in an amount that will be proven at trial, together with pre and post judgment interest at the legal rate, the grossing up of any damages award to account for tax consequences and Plaintiff's attorney's fees and costs.

E. <u>Fourth Cause of Action: Retaliation</u>. During Andrew's employment at TBC, Defendants retaliated against Andrew for his insistence that TBC honor its commitment that he would not have to work the 3rd shift. When Andrew objected to Defendants conduct, TBC retaliated against Andrew by placing him on an unpaid medical leave of absence even though TBC had work that Andrew could have performed on the 1st and 2nd shifts that would not have violated his medical restrictions. As a direct proximate and legal result of TBC's actions, Andrew sustained economic and not economic damage in an amount that will be proven at trial, together with pre and post judgment interest at the legal rate, the grossing up of any damages award to account for tax consequences and Plaintiff's attorney's fees and costs.

F. <u>Fifth Cause of Action: Breach of Contract.</u> Defendants extended an offer of employment to Andrew that promised him he would be assigned to work the 2nd shift due to his preexisting disability. Andrew, to his detriment, relied on the promises made by Defendants and moved across country to accept Defendants' promised position.

Defendants breached their promise and, in fact, had no intention of complying with their promise to allow Andrew to work the 2nd shift. As a direct proximate and legal result of TBC's actions, Andrew sustained economic and not economic damage in an amount that will be proven at trial, together with pre and post judgment interest at the legal rate, the grossing up of any damages award to account for tax consequences and Plaintiff's attorney's fees and costs.

G. <u>Sixth Cause of Action: Declaration of Rights under Contract.</u> After Andrew accepted Defendants offer to work on the 2nd shift, he became entitled to receive relocation expenses. Defendants now seek reimbursement of those relocation expenses. Andrew is requesting this Court to declare that he is not required to repay TBC for his relocation expenses since Defendants failed to accommodate his disability, failed to accommodate his disability, breached their contractual duties to Andrew, retaliated against him based on his insistence that Defendants adhere to their legally required duties and terminated him in violation of public policy.

## IV.  WAIVER OF PHYSICIAN PATIENT PRIVILEGE

Plaintiff hereby waives the physician-patient privilege only to the extent required by RCW 5.60.060, as limited by the Plaintiff's constitutional rights of privacy, contractual rights of privacy, and the ethical obligation of physicians and attorneys not to engage in ex parted contact between a treating physician and the patient's legal adversaries.

## V.  RESERVATION OF RIGHTS

The Plaintiff reserves the right to conduct discovery into alternative claims and to amend this Complaint to add additional causes of action and other defendants.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for this court to grant the following relief:

A. To award the Plaintiff his damages, against all named Defendants, on the Plaintiff's First Cause of Action together with all economic damages as proven at trial and non-economic. damages, including but not limited to, severe emotional distress, anxiety, depression, emotional trauma, loss of earnings both past and future, loss of

COMPLAINT FOR DAMAGES - 7

promotional opportunities both past and future, physical illnesses and such other special and general damages as will be proven at the time of trial. Plaintiff also requests an award of pre-judgment and post-judgment interest at the legal rate of 12% per annum and an award of his10 attorney's fees and costs and an award of twice the amount of wages unlawfully withheld pursuant to RCW 49.52.070.

B. To award the Plaintiff his damages, against all named Defendants, on the Plaintiff's Second Cause of Action together with all economic damages sustained by the Plaintiff, including but not limited to, back pay, front pay and health care expenses, together with pre-judgment and post-judgment interest at the legal rate, as well as, the Plaintiff's non-economic damages (general damages) in an amount to be proven at trial, together with an award of Plaintiff's attorney's fees and costs.

C. To award the Plaintiff his damages, against all named Defendants, on the Plaintiff's Third Cause of Action together with all economic damages sustained by the Plaintiff, including but not limited to, back pay, front pay and health care expenses, with pre-judgment and post-judgment interest at the legal rate, as well as, non-economic damages (general damages) in an amount to be proven at trial, together with an award of Plaintiff's attorney's fees and costs.

D. To award the Plaintiff his damages, against all named Defendants, on the Plaintiff's Fourth Cause of Action together with all economic damages sustained by the Plaintiff, including but not limited to, back pay, front pay and health care expenses, together with pre-judgment and post-judgment interest at the legal rate, as well as, the Plaintiff's non-economic damages (general damages) in an amount to be proven at trial, together with an award of Plaintiff's attorney's fees and costs.

E. To award the Plaintiff his damages, against all named Defendants, on the Plaintiff's Fifth Cause of Action together with all economic damages sustained by the Plaintiff, including but not limited to, back pay, front pay and health care expenses, together with pre-judgment and post-judgment interest at the legal rate, as well as, the Plaintiff's non-economic damages (general damages) in an amount to be proven at trial, together with an award of Plaintiff's attorney's fees and costs.

F. For a declaration of rights under the terms of TBC's moving expense agreement that Andrew is not required to repay TBC for moving expenses incurred in moving from North Carolina to Seattle/Auburn Washington together with all economic damages sustained by the Plaintiff, including but not limited to, back pay, front pay and health care expenses, together with pre-judgment and post-judgment interest at the legal rate, as well as, the Plaintiff's non-economic damages (general damages) in an amount to be proven at trial, together with an award of Plaintiff's attorney's fees and costs.

G. To award the Plaintiff his attorney's fees and costs in prosecuting this action.

H. For such other and further relief as this Court deems just and equitable.

Dated this 13th day of August 2020.

THE STEPHENS LAW FIRM

*/s/ J. Roderik Stephens*
J. Roderik Stephens, WSBA#14538
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES - 9

THE STEPHENS LAW FIRM
424 29TH St. NE Suite D
Puyallup WA 98372
253.863.2525