THE HONORABLE LAUREN J. KING

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW BELL and BECKY BELL, husband and wife,

Plaintiffs,

v.

THE BOEING COMPANY, a Delaware corporation licensed as a Washington foreign corporation

Defendant.

No. 2:20-cv-01716 LJK

DEFENDANT THE BOEING COMPANY'S MOTION FOR SUMMARY JUDGMENT

NOTE FOR MOTION CALENDAR
January 14, 2022

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................. 2

      A.      Plaintiff accepted a contingent offer of employment with Boeing in 2017 .................................................................................................................. 2

      B.      Mr. Bell was medically cleared to work as a Machine Repair Technician A with no restrictions. ............................................................. 3

      C.      Mr. Bell did not begin his employment with Boeing until more than five months after he accepted the contingent offer for personal reasons ...................................................................................................................... 4

      D.      Mr. Bell received a substantial relocation benefit from Boeing to move from North Carolina to Washington. ............................................ 4

      E.      Mr. Bell starts working on second shift and his workgroup undergoes a work shift rebalancing. ....................................................... 5

      F.      Mr. Bell refuses to move to third shift and requests accommodation. ........................................................................................... 7

      G.      Boeing accommodates Mr. Bell's temporary medical restriction by allowing him to remain on second shift for an additional 30 days. ...................... 8

      H.      Boeing continues to accommodate Mr. Bell with a temporary medical leave of absence and short-term disability benefits while he undergoes additional testing; None of Mr. Bell's medical providers ever recommend a permanent restriction from working third shift. ....................................................................................................... 9

      I.      Mr. Bell immediately moved back to North Carolina. ...................... 9

      J.      Mr. Bell discontinues his medical care, stops cooperating with the disability benefits administrator, and is eventually discharged for job abandonment. .................................................................................... 12

      K.      Mr. Bell was notified of his repayment obligations in the Relocation Repayment Agreement he accepted. ............................... 14

III.    SUMMARY JUDGMENT STANDARD ........................................................ 14

IV.     ARGUMENT ................................................................................................... 15

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS
**(continued)**

**Page**

A.   Mr. Bell's Failure to Accommodate Claim Under the Washington
Law Against Discrimination Fails as a Matter of Law. ....................... 15

    1.   Boeing was not obligated to accommodate Mr. Bell's sleep
disorder prior to June 2018. ..................................... 15

    2.   Boeing reasonably accommodated Mr. Bell's sleep
disorder. ......................................................... 16

    3.   Unlike Mr. Bell, Boeing fulfilled its obligations to engage
in an interactive dialogue to ensure Mr. Bell was
reasonably accommodated. ......................................... 17

B.   Mr. Bell's Wrongful Termination in Violation of Public Policy
Claim Fails as a Matter of Law. ..................................... 18

C.   Mr. Bell's Disability Discrimination Claim Under the WLAD Fails
as a Matter of Law. .................................................. 19

D.   Mr. Bell's Retaliation Claim Fails as a Matter of Law. .................. 21

E.   Mr. Bell's Breach of Contract Claim Fails as a Matter of Law. ........... 23

F.   Mr. Bell's Request for Declaratory Relief Should be Denied. ............. 24

V.   CONCLUSION ........................................................ 24

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – ii

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................15

*Beaver v. Tarsadia Hotels*,
816 F.3d 1170 (9th Cir. 2016) ..........................................................................14

*Beck v University of Wisconsin Bd. of Regents*,
75 F.3d 1130 (7th Cir. 1996) .............................................................................17

*Bradley v. Harcourt, Brace & Co.*,
104 F.3d 267 (9th Cir. 1996) .............................................................................21

*Brooks v. City of San Mateo*,
229 F.3d 917 (9th Cir. 2000) .............................................................................21

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................14

*Daniel v. Boeing Co.*,
764 F. Supp. 2d 1233 (W.D. Wash. 2011)........................................................21

*Dries v. Sprinklr, Inc.*,
C20-47-MLP, 2020 WL 6119423 (W.D. Wash. Oct. 16, 2020)........................23

*E-Z Loader Boat Trailers, Inc. v. Travelers Indemnity Co.*,
726 P.2d 439 (1986)...........................................................................................22

*Edwards v. Tacoma Pub. Sch.*,
C04-5656 RBL, 2006 WL 3000897 (W.D. Wash. Oct. 20, 2006), aff'd, 275
Fed. Appx. 629 (9th Cir. 2008)..........................................................................16

*Far Out Prods., Inc. v. Oskar*,
247 F.3d 986 (9th Cir. 2001) .............................................................................15

*French v. Sabey Corp.*,
134 Wash. 2d 547, 951 P.2d 260 (1998)............................................................23

*Gibson v. Costco Wholesale, Inc.*,
488 P.3d 869 (Wash. Ct. App. 2021) .................................................................15

*Goodman v. Boeing Co.*,
899 P.2d 1265 (Wash. 1995)........................................................................17, 18

*Graves v. Dep't of Game*,
887 P.2d 424 (1994)...........................................................................................22

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – iii

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Mackey v. Home Depot USA, Inc.*,
  459 P.3d 371 (Wash. Ct. App. 2020) ............................................................................ 19, 20, 21

*McDaniels v. Group Health Co-op.*,
  57 F. Supp. 3d 1300 (W.D. Wash. 2014) ................................................................................ 21

*McElwain v. Boeing Co.*,
  244 F. Supp. 3d 1093 (W.D. Wash. 2017) .............................................................................. 21

*Neely v. Benchmark Fam. Servs.*,
  640 F. App'x 429 (6th Cir. 2016) .......................................................................................... 16

*Perkins v. Bd. of Trustees of Univ. of Illinois*,
  1996 WL 374126 (N.D. Ill. June 27, 1996) ............................................................................ 17

*Quezada v. City of Entiat*,
  2:18-CV-118-RMP, 2018 WL 4289327 (E.D. Wash. Sept. 7, 2018) .................................... 23

*Ray v. Henderson*,
  217 F.3d 1234 (9th Cir. 2000) ............................................................................................... 22

*Rivera v. Nat'l R.R. Passenger Corp.*,
  331 F.3d 1074 (9th Cir. 2003) ............................................................................................... 21

*Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*,
  257 P.3d 586 (Wash. 2011) .................................................................................................... 19

*Shaffstall v. Old Dominion Freight Line, Inc.*,
  C18-1656-JCC, 2020 WL 1515621 (W.D. Wash. Mar. 30, 2020) ........................................ 19

*Taylor v. Burlington N. R.R. Holdings, Inc.*,
  193 Wn.2d 611 (2019) ............................................................................................................ 15

*US Airways, Inc. v. Barnett*,
  535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002) ..................................................... 16

*Willis v. Pacific Maritime Ass'n*,
  244 F.3d 675 (9th Cir.2001) ................................................................................................... 17

*Zivkovic v. So. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) ............................................................................................... 17

STATUTES

RCW § 19.36.010 .......................................................................................................................... 23

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – iv

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**TABLE OF AUTHORITIES**
(continued)

2

3

**Page(s)**

4

RCW § 49.60.040 ................................................................................................................15

5

RCW § 49.60.210 ................................................................................................................22

6

**RULES**

7

Fed. R. Civ P. 56(a) ...........................................................................................................14

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# I.    INTRODUCTION

Plaintiff Andrew Bell asserts a variety of meritless claims against The Boeing Company ("Boeing") in connection with the termination of his brief employment after he declined to work third shift. Mr. Bell accepted a written offer of employment with Boeing in Washington which stated that the position was covered by a Collective Bargaining Unit Agreement. At the time he was hired in November 2017, the position was on second shift. Mr. Bell delayed his start date to April 2018 for personal reasons. After he started, Mr. Bell, along with others in his role, were reassigned to the third shift in June 2018, as part of a rebalancing of workload and staffing levels. These reassignments were conducted pursuant to the terms of the seniority system under the Collective Bargaining Unit Agreement. Mr. Bell demanded he be excused from reassignment to third shift as an accommodation for an undiagnosed sleep condition for which he had no history of ever being diagnosed or treated by any health care provider. Boeing requested medical information to support Mr. Bell's accommodation request and, in the interim, permitted him to remain on second shift for 30 days. Mr. Bell's medical providers indicated that he was temporarily restricted from working third shift, but additional testing was required to determine the underlying causes of Mr. Bell's complaints and whether a permanent restriction was necessary. After the 30-day extension, Mr. Bell was placed on medical leave pending further information from his medical providers, at which point he immediately packed up and moved back to his home in North Carolina.

Boeing, and its disability leave benefits administrator, the Reed Group, continued to communicate with Mr. Bell and his medical providers throughout his leave of absence to determine the nature and extent of Mr. Bell's medical restrictions, need for accommodation and eligibility for disability benefits. At no point did any of Mr. Bell's medical providers indicate that a permanent restriction from working third shift was necessary.

Mr. Bell underwent testing in November 2018 to determine whether he had narcolepsy which would have supported a permanent restriction, but the results were negative. After that,

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   Mr. Bell stopped seeing any sleep specialist doctor. Despite being repeatedly notified by the Reed
2   Group that his approved leave ended in January and that additional medical certification was
3   required to continue his leave, Mr. Bell admits that he never provided updated medical information
4   to support his medical leave continuing beyond January 2019. Mr. Bell was contacted by both his
5   manager and HR about his situation. He was informed that his employment would be terminated
6   for job abandonment if he did not return to work or obtain approved medical leave. In response,
7   he laughed and stated he did not intend to return to work in Washington or provide additional
8   medical certification. Accordingly, his employment was terminated effective March 23, 2019.

9          All of Mr. Bell's claims fail as a matter of law. As a threshold matter, Bell's failure to
10  accommodate claim fails because (1) his request for a permanent exemption from assignment to
11  third shift in violation of the bona fide seniority system under the Collective Bargaining Unit
12  Agreement is per se unreasonable; and (2) he was reasonably accommodated with a medical leave
13  of absence until he failed to cooperate with the interactive process by refusing to provide updated
14  medical documentation supporting the need for ongoing leave. Second, Bell's wrongful discharge
15  in violation of public policy claim fails because he cannot show he was discharged for exercising
16  any public-policy-linked rights. Third, his disability discrimination and retaliation claims fail
17  because he cannot show his termination was due to discrimination or retaliation as opposed to his
18  failure to provide support for continued leave or return to work. Forth, his breach of contract claim
19  fails because he cannot establish any enforceable contractual duty other than under the Collective
20  Bargaining Unit Agreement which he does not allege was violated. Finally, Mr. Bell's request for
21  declaratory relief from his repayment obligations under his Relocation Repayment Agreement
22  (although there is no legal action pending requesting repayment) should be denied because he
23  presents no legal basis for such relief.

24                            **II.    STATEMENT OF FACTS**

25  **A.    Plaintiff accepted a contingent offer of employment with Boeing in 2017.**

26         In 2017, Boeing was recruiting for Machine Repair Mechanic positions in the Puget Sound

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 2

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

region. Boeing posted a hub requisition, which is a single job requisition to which multiple open positions can be attached. The positions were in different Boeing locations and on various shifts, but the job requirements and descriptions were the same. Interested candidates were able to apply for screening and consideration for any of the open positions for which they may be qualified. Declaration of Julie Lucht ("Lucht Decl.") ¶ 4, Ex. C (Deposition of Kaitlyn Parsons ("Parsons Dep.") at 35:3-16); ¶ 5, Ex. D (Deposition of David Loverich at 23:16-24).

In August 2017, Plaintiff Andrew Bell, while living in North Carolina, applied to a hub requisition for a Machine Repair Mechanic A position with Boeing. Declaration of Erica Loud ("Loud Decl.") ¶ 2, Ex. A at TBC-BELL 000027-30. Boeing offered Mr. Bell two Machine Repair Mechanic A positions. The first offer, which was sent to Mr. Bell on October 13, was for a position in Puyallup, Washington, which Mr. Bell did not accept. Lucht Decl. ¶ 2, Ex. A (Deposition of Andrew Bell ("Bell Dep.") at 150:10-25; ¶ 3, Ex. B at TBC-BELL 000001-04. On November 3, 2017, Boeing offered Mr. Bell a Machine Repair Mechanic A position in Auburn, Washington, which he accepted. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 151:1-22); ¶ 3, Ex. B at TBC-BELL 000005-08. The offer letter indicated the position was on second shift but stated that it was "for a union-represented position" and that the "position [was] covered by a Collective Bargaining Unit Agreement." *Id.*

**B.  Mr. Bell was medically cleared to work as a Machine Repair Technician A with no restrictions.**

After accepting the contingent offer of employment, Mr. Bell was required to complete the contingent offer requirements outlined in the offer letter, including a post-offer medical review that included a Post-Offer Health Questionnaire meant to alert Boeing to "any potential health concerns and/or medical conditions that may be affected by the job." Mr. Bell responded to the health questionnaire on November 20, 2017. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 162:7-163:3); ¶ 6, Ex. E at TBC-BELL 000088-95. Mr. Bell indicated "No" to the following questions included in the questionnaire:

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 3

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1       • Do you have any medical conditions or limitations which would keep you from

2           performing the functions of the job you have been offered?

3       • Do you require any modifications of the job in order to perform the functions of the job

4           you have been offered?

5       • Do you have any specific medical conditions which you think might affect your ability

6           to safely perform your job you have been offered?

7       • Do you have any health concerns about the job you have been offered?

8  *Id.* at TBC-BELL 000093-94. Based on these responses, Mr. Bell was medically cleared to work

9  as a Machine Repair Mechanic A with no restrictions. *Id.* at TBC-BELL 000095.

10  **C.**    **Mr. Bell did not begin his employment with Boeing until more than five months**

11           **after he accepted the contingent offer for personal reasons.**

12       Mr. Bell accepted the employment offer shortly after receiving the offer letter in early

13  November 2017. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 151:15-22); ¶ 7, Ex. F (Deposition of James

14  Watterson ("Watterson Dep.")) at 32:16-33:24; ¶ 8, Ex. G at TBC-BELL 000634-35. However,

15  Mr. Bell did not begin his employment with Boeing until April 2018 because his wife was

16  scheduled for a medical procedure early in 2018 and he wanted to provide his then current

17  employer sufficient notice. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 65:22-66:10). Mr. Bell asked to

18  further postpone his start date from April 13, 2018 to April 20, 2018, to accommodate a request

19  by his then current employer to delay his resignation by a week. Declaration of Kaitlyn Parsons

20  ¶ 2, Ex. A at TBC-BELL 000651-52. Boeing granted this request. *Id.*

21  **D.**    **Mr. Bell received a substantial relocation benefit from Boeing to move from North**

22           **Carolina to Washington.**

23       Under certain conditions, Boeing provides financial assistance for new hires to relocate.

24  Mr. Bell was informed that he was eligible to receive relocation assistance benefits in his offer

25  letter. Lucht Decl. ¶ 3, Ex. B at TBC-BELL 000005. This is a voluntary benefit; eligible new hires

26  are not required to utilize relocation assistance.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 4

1    The terms and conditions for receiving relocation assistance benefits are specified in

2  Boeing's US Domestic New Hire Relocation Handbook, which was provided to Mr. Bell along

3  with his offer letter. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 206:10-207:12); ¶ 9, Ex. H at Andrew

4  Bell000163-197. To receive benefits, eligible new hires are required to complete a repayment

5  agreement. *Id.* at Andrew Bell000197. The agreement specifies that any funds provided under the

6  relocation benefit program are subject to repayment if, within 12 months of the new hire's start

7  date, they voluntarily terminate their employment, are involuntarily terminated for a reason other

8  than a reduction in work force, or do not establish a permanent verifiable residence in the new

9  work location. *Id.*

10    Mr. Bell chose to use the relocation assistance benefits offered by Boeing. On April 3,

11  2018, Mr. Bell executed the Relocation Repayment Agreement, acknowledging and agreeing to

12  his repayment obligations if he accepted the benefits and separated from employment prior to 12

13  months. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 208:10-210:18); ¶ 10, Ex. I at TBC-BELL 000566.

14  He drove a trailer from North Carolina to Washington which took him approximately 5 days. Lucht

15  Decl. ¶ 2, Ex. A (Bell Dep. at 66:16-67:15). Mr. Bell received $13,938.62 in relocation funds,

16  which exceeded his actual relocation expenses, as well as $5,653.22 in tax assistance to offset the

17  anticipated tax liability on the taxable relocation benefits he received through the program. Lucht

18  Decl. ¶ 2, Ex. A (Bell Dep. at 214:4-8); ¶ 11, Ex. J at TBC-BELL 000574-77.

19    When Mr. Bell arrived in Washington, he moved into a rented room in Puyallup. Lucht

20  Decl. ¶ 2, Ex. A (Bell Dep. at 21:16-21, 66:16-22). Mr. Bell's wife remained in North Carolina in

21  the home they've owned for over 30 years. *Id.* at 17:8-18:6, 19:16-19. Mrs. Bell never visited

22  Washington, nor did she ever make any arrangements to relocate with Mr. Bell to Washington. *Id.*

23  at 20:5-6, 64:23-25.

24  **E.   Mr. Bell starts working on second shift and his workgroup undergoes a work shift
         rebalancing.**

25

26    On April 20, 2021, Mr. Bell finally started work at the Boeing facility in Auburn,

---

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   Washington. After undergoing mandatory new hire orientation, Mr. Bell began working as a

2   Machine Repair Mechanic on second shift as described in his offer letter. The workgroup that

3   Mr. Bell was hired into is called Emergent Operations - Equipment Services. At the time, James

4   Watterson was the second shift Manufacturing Manager for Equipment Service and was Mr. Bell's

5   direct manager for the entirety of his employment with Boeing.

6       Around April 2018, the Equipment Services workgroup initiated a staffing review and

7   determined that a shift load rebalancing was required to meet business needs. At the time, there

8   were too many employees, including machine repair mechanics, assigned to first and second shift,

9   and too few assigned to third shift. Lucht Decl. ¶ 7, Ex. F (Watterson Dep. at 41:4-12). To

10  redistribute the workload across the three shifts, some employees from first and second shift would

11  have to be reassigned to third shift. *Id.* at 41:4-12.

12      Under the terms of Boeing's Collective Bargaining Unit Agreement ("CBA") with the

13  International Association of Machinists and Aerospace Workers ("IAM"), Boeing retains the right

14  to assign employees to any shift to ensure operational efficiency but must consider individual

15  employees' shift preferences based on seniority when making work assignment adjustments. Lucht

16  Decl. ¶ 2, Ex. A (Bell Dep. at 164:11-168:14); ¶ 12, Ex. K at TBC-BELL 000245-46. The CBA

17  provides that less senior employees, including new hires, will be displaced from their preferred

18  shift to accommodate a more senior employee's stated shift preference. It also expressly prohibits

19  Boeing from allowing a less senior employee to displace a more senior employee from a preferred

20  shift assignment. *Id.* at TBC-BELL 000245-46 ("senior employees who have a shift preference on

21  file shall be given preference over junior employees who are assigned to the same job title and

22  shift … for placement in openings in their job title and organization."). For example, when second

23  shift is overstaffed, and third shift is understaffed, Boeing must reassign employees from second

24  shift to third shift according to who has the least seniority unless a more senior employee has a

25  preference for third shift. That is precisely what transpired here. To comply with the requirements

26  of the CBA, the first, second and third shift managers had to work through the seniority list to

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

92412359.7

1    determine which employees would be reassigned to balance the workloads across the three shifts.

2    Ultimately, Mr. Bell and another second shift employee who started at the same time as Mr. Bell

3    were identified for reassignment to third shift due to their lower seniority.

4    **F.      Mr. Bell refuses to move to third shift and requests accommodation.**

5           Mr. Bell told his manager that he refused to move to third shift. He subsequently spoke to

6    Human Resources and claimed that he had a medical condition that prevented him from working

7    third shift. Mr. Bell was instructed to go to Boeing Medical if he wanted to request accommodation

8    for a medical condition. On June 7, 2018, Mr. Bell visited the Boeing Medical Clinic at the Auburn

9    facility and requested a disability accommodation. At this time, Mr. Bell presented a note from his

10   doctor requesting that Mr. Bell be excused from working third shift for an unspecified medical

11   reason. Lucht Decl. ¶ 13, Ex. L at ABELL000009. Mr. Bell admits that he had never been

12   diagnosed or treated for any medical condition related to sleep prior to starting work at Boeing.

13   Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 26:17-27:14, 269:16-270:6). The Boeing Medical Clinic report

14   also notes that Mr. Bell's request was to accommodate an as-yet undiagnosed condition and, at

15   that point, he was still awaiting further testing. Loud Decl. ¶ 3, Ex. B at TBC-BELL 000081-83.

16   Mr. Bell was provided Boeing's Reasonable Accommodation and Health Care Provider

17   Information Form to complete regarding his request for accommodation. Lucht Decl. ¶ 14, Ex. M

18   at ABELL000058-59. Mr. Bell completed the form requesting an accommodation to work only

19   first or second shift and signed the authorization to allow Boeing Medical to contact his health care

20   provider for additional information to determine an appropriate accommodation. *Id.*

21          The next day, June 8, 2018, Boeing Medical faxed a copy of the form and authorization to

22   Mr. Bell's physician, Dr. Kardasheva, to complete the health care provider portion. Loud Decl. ¶

23   3, Ex. B at TBC-BELL 000073-74. Dr. Kardasheva completed and signed the form on June 15. *Id.*

24   On the form, Dr. Kardasheva clarified that Mr. Bell was being referred for additional studies to

25   determine the underlying cause for the alleged "sudden dropping / falling asleep on the job" that

26   Mr. Bell complained of during his visit. *Id.* Mr. Bell admits that the last time that he worked a

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 7

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    night shift and experienced any of these alleged symptoms was at a previous employer *almost a*

2    *decade* before starting at Boeing. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 28:1-29:16, 269:7-15). Dr.

3    Kardasheva further noted that the requested accommodation (i.e., a restriction from working third

4    shift) would have to be considered permanent only "[i]f unable to find a cause for patient's clinical

5    presentation." Loud Decl. ¶ 3, Ex. B at TBC-BELL 000073-74.

6           Noting that the permanence for the recommended restriction was contingent on not finding

7    an underlying cause for Mr. Bell's inability to remain awake overnight with further testing, Boeing

8    Medical asked Dr. Kardasheva for clarification on June 22, 2018. Lucht Decl. ¶ 4, Ex. C (Parsons

9    Dep. at 97:13-98:13); ¶ 15, Ex. N at TBC-BELL 000069. Dr. Kardasheva responded that

10   Mr. Bell's restriction should be considered temporary unless or until such time that an underlying

11   cause could be identified to confirm the need for a permanent restriction. *Id.*

12   **G.     Boeing accommodates Mr. Bell's temporary medical restriction by allowing him to
             remain on second shift for an additional 30 days.**

13

14          As part of the shift rebalancing, in accordance with the processes Boeing developed to

15   ensure compliance with the CBA, Mr. Bell received a formal notice that he was being reassigned

16   to third shift. On June 12, 2018, Mr. Watterson presented Mr. Bell with a Shift Change and

17   Temporary Move Memo indicating that Mr. Bell would be transferred to third shift effective June

18   25, 2018. Lucht Decl. ¶ 2, Ex. A (Watterson Dep. at 48:25-51:3). On June 20, 2018, a meeting was

19   held with Kaitlyn Parsons (the HR Generalist for the Equipment Services group), Mr. Bell, Mr.

20   Watterson, Tom Klotz (the Disability Management Representative assigned to facilitate Mr. Bell's

21   reasonable accommodation request), and Wilson "Fergie" Ferguson (Mr. Bell's union business

22   representative), to discuss the shift change in light of Mr. Bell's pending accommodation request.

23   Lucht Decl. ¶ 18, Ex. Q (Deposition of Thomas Klotz at 13:12-14:4; 20:20-21:2; 23:8-24:20); ¶

24   19, Ex. R at ABELL000037; ¶ 20, Ex. S at TBC-BELL 000691. Mr. Bell was notified that he

25   would be allowed to continue working on second shift as a temporary accommodation for 30 days,

26   until July 22, pending completion of the additional testing ordered by Dr. Kardasheva and receipt

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

of additional medical information to clarify the extent of his third shift restriction. He was informed that because of the conflict with the CBA, he could only be accommodated for 30 days on his preferred shift but would continue to be accommodated with a temporary medical leave of absence if he was unable to work his assigned shift by July 22. He was advised that a permanent restriction against third shift work could result in his placement into the reassignment process to determine if there were available alternative positions he was qualified for. *Id.* at TBC-BELL 000691.

**H.      Boeing continues to accommodate Mr. Bell with a temporary medical leave of absence and short-term disability benefits while he undergoes additional testing; None of Mr. Bell's medical providers ever recommend a permanent restriction from working third shift.**

On July 16, 2018, Mr. Bell first obtained a Continuous Positive Airway Pressure (CPAP) machine to assist with sleep. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 137:2-13; 138:24-139:1); ¶ 16, Ex. O at MED-BELL 000139. On July 17, Mr. Bell provided Boeing Medical with a copy of a sleep apnea home test report, which indicated a diagnosis of obstructive sleep apnea. Loud Decl. ¶ 3, Ex. B at TBC-BELL 000097-98. Boeing Medical then attempted to contact Dr. Kardasheva to confirm Mr. Bell's medical restrictions in light of the new test results. Boeing Medical did not receive a response before July 22, so Mr. Bell was informed that he would be placed on a Medical Leave of Absence to continue accommodating his temporary medical restrictions unless and until (1) he was medically released to work on third shift, (2) his medical provider determined that his restriction was permanent, or (3) he exhausted his leave of absence benefits. Lucht Decl. ¶ 20, Ex. S at TBC-BELL 000690-92; ¶ 2, Ex. A (Bell Dep. at 109:14-110:19).

**I.      Mr. Bell immediately moved back to North Carolina.**

As soon as Mr. Bell's medical leave of absence began on July 22, he packed up all of his belongings and moved back to his home in North Carolina where his wife had remained. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 117:25-118:8).

On July 23, and again on August 2, Boeing Medical attempted to contact Dr. Kardasheva to confirm Mr. Bell's medical restrictions. The lack of response from Dr. Kardasheva appears to

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    be due to his inability to contact Mr. Bell for follow-up regarding his sleep study results. Dr.

2    Kardasheva noted he was not able to confirm any medical restrictions because he did not "have a

3    clinical reason for [Mr. Bell] to not be able to work a 3rd shift." Lucht Decl. ¶ 16, Ex. O at MED-

4    BELL 102-103. Instead, Dr. Kardasheva referred Mr. Bell back to his sleep specialist, apparently

5    unaware that Mr. Bell had relocated back to North Carolina. *Id.*

6        On September 17, 2018, Mr. Bell then attempted to have his Washington-based sleep

7    specialist, Dr. Sabzpoushan, confirm his medical restrictions. *Id.* at MED-BELL 0098-99 ("Patient

8    is requesting a letter from Dr. Sabzpoushan for restrictions on working 3rd shifts. Patient can't

9    work on 3rd shifts due to sleep apnea. Please send the letter to Boeing Medical."). On

10    September 21, after learning that Mr. Bell was now located in North Carolina, Dr. Sabzpoushan

11    informed Mr. Bell that his downloaded CPAP data "doesn't demonstrate that he is using the CPAP

12    at this time." *Id.* at MED-BELL 0096. Mr. Bell was encouraged to seek treatment from a local

13    (North Carolina) sleep specialist for further care. *Id*. Dr. Sabzpoushan never provided Mr. Bell

14    with his requested letter and never confirmed with Boeing any medical restrictions due to

15    Mr. Bell's sleep apnea.

16        At this point, because Mr. Bell was on a medical leave of absence and had requested short

17    term disability benefits, Boeing's leave administrator, the Reed Group began handling Mr. Bell's

18    medical certifications. Lucht Decl. ¶ 4, Ex. C (Parsons Dep. at 112:18-113:9); ¶ 21, Ex. T at TBC-

19    BELL 000169-70; ¶ 2, Ex. A (Bell Dep. at 189:11-14). In a letter dated September 26, the Reed

20    Group informed Mr. Bell that additional action was necessary to confirm his continued eligibility

21    for medical leave and approve his disability benefits, including (1) providing authorization for the

22    Reed Group to communicate with his health care providers; (2) completing a Health Care Provider

23    Form; and (3) submitting a statement from his physician to confirm the need for benefits. Loud

24    Decl. ¶ 4, Ex. C at TBC-BELL 000103-106.

25        In October, Mr. Bell requested his records from the sleep specialist in Washington be

26    transferred to Guilford Neurological Associates ("Guilford") in North Carolina. Lucht Decl. ¶ 16,

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 10

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Ex. O at MED-BELL 0092. On October 10, Mr. Bell had an office visit to establish care with Dr.

2    Dohmeier at Guilford, where his chief complaint was noted as "' my employer needs to know why

3    I cannot work third shift.'" Lucht Decl. ¶ 17, Ex. P at MED-BELL 000058. At this visit, Dr.

4    Dohmeier ordered a test to rule out narcolepsy. *Id.* at MED-BELL 000059. On October 16, the

5    Reed Group received a fax from Guilford that included a completed Attending Physician's

6    Statement of Work Capacity and Impairment. Loud Decl. ¶ 4, Ex. C at TBC-BELL 000171-181.

7    Dr. Dohmeier indicated that Mr. Bell "will return to work" after additional testing, and that he

8    would reach maximum medical improvement "once using [sic] CPAP compliantly for 30 days."

9    *Id.* at TBC-BELL 000173. Dr. Dohmeier also indicated that no permanent restrictions were

10   anticipated or currently recommended at that time. *Id.*

11        Based on this documentation, in a letter dated October 19, 2018, the Reed Group informed

12   Mr. Bell that his medical leave of absence and short-term disability benefits were approved

13   through November 11, 2018. Loud Decl. ¶ 4, Ex. C at TBC-BELL 000121-22. The Reed Group

14   also sent Mr. Bell a November 13 letter informing him that his short-term disability benefits would

15   end January 20, 2019, at which time he would be required to apply for long-term disability

16   coverage. *Id.* at TBC-BELL 000127-28; Lucht Decl. ¶ 2, Ex. A (Bell Dep. at. 191:6-10).

17        Mr. Bell returned to see Dr. Dohmeier on November 2, 2018, "for a compliance visit with

18   CPAP." Lucht Decl. ¶ 17, Ex. P at MED-BELL 000064. At this visit, Dr. Dohmeier reviewed

19   Bell's CPAP usage data and noted "compliance is still poor." *Id.* Dr. Dohmeier further noted that

20   "his sleepiness can be associated with poor CPAP therapy adherence." *Id.* Ultimately, she

21   concluded that "Mr. Bell will be unable to work night shift *until* we have further cleared him for

22   narcolepsy." *Id.* at MED-BELL 000069 (emphasis added). Mr. Bell was then referred for

23   narcolepsy testing which occurred on November 7 and 8. *Id.* at MED-BELL 000070-73.

24        On November 21, Mr. Bell returned to see Dr. Dohmeier to follow-up on his sleep study

25   results. At this point he revealed that he had consumed caffeinated beverages during the sleep

26   study. *Id.* at MED-BELL 000074. Dr. Dohmeier noted that although he "sabotaged His [sic] sleep

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 11

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   study by bringing caffeinated beverages to the sleep lab," she would not reorder the testing. *Id.* at

2   MED-BELL 000076. She informed Mr. Bell that he appeared to be "hypersomnic but not

3   narcoleptic," that she would order a "HLA test. . . . [which] [i]f negative, the diagnosis [would]

4   remain[] hypersomnia, ideopathic. This would not affect his employability or shift work capacity."

5   *Id.* at MED-BELL 000079. She also prescribed Modafinil, which would "help with shift work and

6   with safely operating machinery and driving a car," but noted he "does not want to use a stimulant

7   or near stimulant to help with third shift work." *Id.*

8       In a letter dated November 22, the Reed Group again informed Mr. Bell that additional

9   medical documentation was required to continue his disability benefits. Loud Decl. ¶ 4, Ex. C at

10  TBC-BELL 000129-31. On November 27, 2018, the Reed Group received an Attending

11  Physician's Update of Work Capacity and Impairment form completed by Dr. Dohmeier. *Id.* at

12  TBC-BELL 000187-89. Consistent with her notes from the November 21 office visit, she indicates

13  that while Mr. Bell was able to work any daytime shifts, he could not be fully released to return to

14  work until she received the results of the HLA test to fully rule out narcolepsy.[1] *Id.* Dr. Dohmeier

15  also noted that Mr. Bell was "not fully compliant" with his CPAP use and that his treatment plan

16  includes continued CPAP use and medication to help with sleepiness. *Id.* at TBC-BELL 000188.

17  Mr. Bell admits that he refused to use the prescription medication that could have helped treat his

18  sleep condition. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 240:3-13; 254:7-21). Consistent with the

19  other physician statements, there is no indication that Mr. Bell is permanently restricted from

20  working third shift. On November 30, Mr. Bell received a letter from the Reed Group confirming

21  that his short-term disability leave was approved through January 20, 2019. Loud Decl. ¶ 4, Ex. C

22  at TBC-BELL 000132-34.

23  **J.    Mr. Bell discontinues his medical care, stops cooperating with the disability benefits administrator, and is eventually discharged for job abandonment.**

24

25

26  ---

[1] Mr. Bell testified he has never been diagnosed with narcolepsy. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 192:21-24).

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

The November 27, 2018 form from Guilford was the last medical certification the Reed Group received from any of Mr. Bell's providers. This is also the last time Mr. Bell sought or received medical evaluation or treatment for his sleep conditions.[2] Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 276:4-20; 277:14-278:14).

In a letter dated January 15, 2019, the Reed Group informed Mr. Bell again that additional medical certification was required to extend his medical leave and disability benefits. Loud Decl. ¶ 4, Ex. C at TBC-BELL 000135-37. This letter warned him that insufficient medical certification could result in denial of leave. *Id.* On February 8, 2019, the Reed Group sent a letter informing Mr. Bell that his leave extension request was denied because the requested medical certification had not been received and that if he did not return to work or contact his manager, he would be subject to corrective action up to and including termination of employment. *Id.* at TBC-BELL 000138-140. The letter also stated "If you believe a reasonable accommodation would allow you to return to work or perform your job duties or you would like information about potential workplace accommodations, he should contact Accommodation Services" at the provided number. *Id.* Mr. Bell admits that he did not produce any new medical certifications to extend his leave. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 190:24-191:23).

In February, Mr. Watterson was notified by the leave management system that Mr. Bell's leave extension was denied. Lucht Decl. ¶ 7, Ex. F (Watterson Dep. at 139:17-140:13), ¶ 24, Ex. W at TBC-BELL 000623-625. He reached out to HR for guidance, and it was determined that Mr. Bell, who had been on leave for over seven months, had exhausted all other accrued leave benefits and was absent without leave. *Id.* In consultation with the leave management team, HR reviewed Mr. Bell's case and determined that Mr. Bell would be subject to termination for job abandonment if he did not return to work or receive approval to extend his leave by March 22. Lucht Decl. ¶ 7, Ex. F (Watterson Dep. at 144:25-146:12), ¶ 23, Ex. V at TBC-BELL 000629-631.

---

[2] Mr. Bell's medical records received from Guilford do not indicate any visits after November 21, 2018. *See generally* Lucht Decl. ¶ 17, Ex. P at MED-BELL 000053-80.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:20-cv-01716 LJK) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   At HR's request, Mr. Watterson contacted Mr. Bell on March 20 and informed him that he was

2   expected to return to work by March 22 or his employment would be terminated. Lucht Decl. ¶ 7,

3   Ex. F (Watterson Dep. at 146:15-148:12), ¶ 25, Ex. X at TBC-BELL 000697-699. In response,

4   Mr. Bell "chuckled" at the idea of returning to work in Washington, since he had already

5   permanently relocated to North Carolina, and he requested his W-2. *Id.*; Lucht Decl. ¶ 2, Ex. A

6   (Bell Dep. at. 122:25-123:17, 193:17-23). On March 21, HR contacted Mr. Bell and confirmed

7   that he had no intention of returning to work, at which time he was informed that his termination

8   would be processed the next day unless he could show that he was on an approved leave of absence.

9   Lucht Decl. ¶ 7, Ex. F (Watterson Dep. at 153:22-154:25), ¶ 26, Ex. Y at TBC-BELL 000212-213;

10  Lucht Decl. ¶ 2, Ex. A (Bell Dep. at. 193:24-194:11). When Mr. Bell failed to return to work as

11  directed or provide medical support for continued leave or other accommodation, his employment

12  was terminated for job abandonment effective March 23, 2019.

13  **K.      Mr. Bell was notified of his repayment obligations in the Relocation Repayment
14           Agreement he accepted.**

15          In April 2019, Boeing sent Mr. Bell a letter informing him that he was required to repay

16  the $19,591.84 of relocation assistance he received. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 214:4-7);

17  ¶ 11, Ex. J at TBC-BELL 000574-77. The debt was transferred to a collection agency in accordance

18  with the Relocation Repayment Agreement that Mr. Bell signed on April 3, 2018. Lucht Decl. ¶

19  2, Ex. A (Bell Dep. at 216:4-14); ¶ 22, Ex. U at Andrew Bell000045; Lucht Decl. ¶ 2, Ex. A (Bell

20  Dep. at 208:10-210:18); ¶ 10, Ex. I at TBC-BELL 000566.

21                              **III.     SUMMARY JUDGMENT STANDARD**

22          Summary judgment is appropriate if the evidence, when viewed in the light most favorable

23  to the non-moving party shows "there is no genuine dispute as to any material fact and the movant

24  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477

25  U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). A fact is

26  "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

1  242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable

2  fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992

3  (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

### IV.    ARGUMENT

**A.    Mr. Bell's Failure to Accommodate Claim Under the Washington Law Against Discrimination Fails as a Matter of Law.**

Mr. Bell's failure to accommodate claim fails for the simple reason that Boeing did, in fact, accommodate Mr. Bell's sleep condition and fulfilled its obligations to engage in the kind of interactive dialogue required by the Washington Law Against Discrimination ("WLAD"). Mr. Bell cannot offer evidence disputing these facts. To prevail on a failure to accommodate claim, Bell must show (1) "he had an impairment that is medically recognizable or diagnosable or exists as a record or history," (2) he gave Boeing notice of the impairment, (3) "the impairment has a substantially limiting effect on his ability to perform his job," (4) "that he would have been able to perform the essential functions of [his] job … with reasonable accommodation," and (5) Boeing did not reasonably accommodate the impairment. *Gibson v. Costco Wholesale, Inc.*, 488 P.3d 869, 877-78 (Wash. Ct. App. 2021).

### 1.    Boeing was not obligated to accommodate Mr. Bell's sleep disorder prior to June 2018.

As an initial matter, Mr. Bell's allegation that Boeing was aware of his undiagnosed sleep disorder at the time it hired him is irrelevant to his failure to accommodate claim. Under the WLAD, to trigger the employer's obligation to accommodate, the employee must show that they actually have an impairment that has "a substantially limiting effect upon the individual's ability to perform his or her job . . . . [or] put[s] the employer on notice of the existence of an impairment, and *medical documentation* . . . establish[s] a reasonable likelihood that engaging in job functions without an accommodation would aggravate the impairment to the extent that it would create a substantially limiting effect." RCW § 49.60.040 (emphasis added); *see also Taylor v. Burlington N. R.R. Holdings, Inc.*, 193 Wn.2d 611, 622 n.4 (2019). Mr. Bell admits that his sleep disorder,

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:20-cv-01716 LJK) – 15

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   which he never consulted a health care provider about until May 31, 2018, only impairs his ability

2   to perform his job functions when working overnight. It is undisputed that Mr. Bell was not

3   expected to work overnight at any point prior to June 25, 2018. Lucht Decl. ¶ 2, Ex. A (Bell Dep.

4   at 109:10-13; 268:23-269:6).[3] Thus, Boeing was not obligated to provide a reasonable

5   accommodation at any point prior to June 2018, because Mr. Bell did not have a qualifying

6   impairment that substantially limited his ability to work second shift.

7               **2.      Boeing reasonably accommodated Mr. Bell's sleep disorder.**

8               At no point did Mr. Bell work overnight without an accommodation. After Mr. Bell

9   initiated Boeing's reasonable accommodation request process by visiting the Boeing Medical

10  clinic on June 7, 2018, Mr. Bell received two accommodations: (1) his transfer to third shift was

11  postponed for 30 days and (2) he was placed on a temporary medical leave of absence while he

12  underwent additional testing to determine whether and to what extent he had an actual impairment

13  that would keep him from being able to perform his job on third shift.

14              Boeing was not obligated to grant Mr. Bell's preferred accommodation—to remain on

15  second shift. *Edwards v. Tacoma Pub. Sch.*, C04-5656 RBL, 2006 WL 3000897, at *4 (W.D.

16  Wash. Oct. 20, 2006), aff'd, 275 Fed. Appx. 629 (9th Cir. 2008) ("An employer is not obligated to

17  provide an employee the accommodation [she] requests or prefers, the employer need only provide

18  some reasonable accommodation." (internal quotations and citations omitted)). In fact, Mr. Bell's

19  requested accommodation was unreasonable on its face because it would have required Boeing to

20  violate the seniority-based preferred shift assignment provisions of the CBA. *See US Airways, Inc.*

21  *v. Barnett*, 535 U.S. 391, 403 (2002) (holding that such a request "would not be reasonable in the

22  run of cases" and will entitle an employer to summary judgment absent a showing of special

23  circumstances); *see also Willis v. Pacific Maritime Ass'n*, 244 F.3d 675, 682 (9th Cir.2001) (where

24  ───────────────

25      [3] It is also undisputed that Mr. Bell was never treated for or diagnosed with any sleep disorder until July 2018 and thus his condition did not meet the definition of disability. *See Neely v. Benchmark Fam. Servs.*, 640 F. App'x

26  429, 433 (6th Cir. 2016) (where plaintiff had seen his doctor and a sleep specialist but had not been diagnosed, plaintiff's bare assertions of sleep apnea, without any supporting medical evidence, could not establish a "physical or mental impairment" within the meaning of the ADA).

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 16

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    a CBA includes a "bona fide seniority system," and there is a "direct conflict between the proposed

2    accommodation and the collectively-bargained seniority rights of other employees," the requested

3    accommodation is per se unreasonable).

### 3.   Unlike Mr. Bell, Boeing fulfilled its obligations to engage in an interactive dialogue to ensure Mr. Bell was reasonably accommodated.

6         Disability accommodations law requires an interactive process between the employer and

7    disabled employee to determine a reasonable accommodation. *See Goodman v. Boeing Co.*, 899

8    P.2d 1265, 1269-70 (Wash. 1995). The employee's responsibilities include "a duty to cooperate"

9    and "explaining [his] disability and qualifications."   *Id.* at 1269. Boeing met its obligations.

10   Mr. Bell did not.

11        Boeing engaged in a continuing dialogue with Mr. Bell and his medical providers from

12   June 2018 through March 2019, attempting to discern the precise nature and extent of Mr. Bell's

13   sleep condition, including any medically recommended restrictions. Every step of the way, either

14   Boeing or the Reed Group were communicating with Mr. Bell and his doctors, soliciting

15   paperwork and information regarding the precise nature Mr. Bell's limitations. Boeing more than

16   satisfied its obligation to engage in an interactive process.

17        Mr. Bell, on the other hand, did not display the same level of cooperation. "Where an

18   employee fails to make reasonable efforts to work with his employer to reasonably accommodate

19   the employee's medical restrictions, as is the case here, the employer cannot be found liable for

20   failure to make reasonable accommodations." *Perkins v. Bd. of Trustees of Univ. of Illinois*, 1996

21   WL 374126, at *4 (N.D. Ill. June 27, 1996) (citing *Beck v University of Wisconsin Bd. of Regents*,

22   75 F.3d 1130, 1137 (7th Cir. 1996)); *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th

23   Cir. 2002) (employer is liable for failing to provide reasonable accommodation only if it is

24   responsible for the breakdown in the interactive process). After being notified by the Reed Group,

25   on multiple occasions, of the importance of updating his medical certifications and warned of the

26   potential consequences, Mr. Bell failed to provide any documentation to support a need to extend

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:20-cv-01716 LJK) – 17

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

his disability leave beyond January 20, 2019. Without the requested information, Boeing's disability benefits administrator had no information to suggest that Mr. Bell's temporary medical restrictions remained in place, and as a result his request for extension was subsequently denied.[4]

In fact, Mr. Bell's actions indicate he had no intention of working with Boeing to find a reasonable accommodation. For instance, Mr. Bell admits that he permanently relocated back to North Carolina immediately upon starting medical leave making himself unavailable for work in Washington. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 70:9-11; 117:25-118:8; 270:14-18). He also was never fully compliant with using his CPAP and "sabotaged" his second sleep study by drinking caffeine. Lucht Decl. ¶ 17, Ex. Pat MED-BELL 000074-79. He was never willing to try working third shift after he began using a CPAP and flatly refused to utilize medication that his doctor prescribed and believed would "allow wakefulness during any shift he works." *Id.* at MED-BELL 000074; Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 240:3-13; 254:7-21). When he could not get his doctor to say that he had a medical condition that would permanently restrict him from working third shift, which Dr. Dohmeier would not do because none of his tests indicated a narcolepsy diagnosis, he just stopped seeing her altogether. This is not the behavior of someone acting in good faith to meet his "duty to cooperate" and "explain[ his] disability and qualifications." *Goodman*, 899 P.2d at 1269.

In sum, it was Mr. Bell's failure to cooperate—not Boeing's—that stymied the interactive process. Boeing should not be held liable for a breakdown in communication Mr. Bell caused. Boeing provided reasonable accommodations based on the recommendations it received from Mr. Bell's medical providers. The WLAD requires nothing more.

**B.    Mr. Bell's Wrongful Termination in Violation of Public Policy Claim Fails as a Matter of Law.**

To the extent Mr. Bell's wrongful termination claim is premised on his failure to

---

[4] Mr. Bell also failed to return to work or request any alternative accommodation when continued leave was denied based on his failure to provide medical documentation and instead accepted other employment in North Carolina. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 73:8-12, 274:23-:275:2); ¶ 28, Ex. AA at ESD-BELL 0160-164.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:20-cv-01716 LJK) – 18

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

accommodate claim, it fails because Boeing accommodated Mr. Bell's disability, as described above. To prevail on his claim for wrongful termination in violation of public policy, Mr. Bell must show (1) the existence of a clear public policy, (2) that discouraging conduct in which he engaged would jeopardize the public policy, (3) that the public-policy-linked conduct caused his dismissal (i.e., causation), and (4) that Boeing cannot offer an overriding justification for the dismissal. *See Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 257 P.3d 586, 595 (Wash. 2011).

Mr. Bell fails to show that he was discharged for exercising any public-policy-linked rights. Mr. Bell was informed multiple times by Boeing's disability benefits administrator that additional certification to confirm his medical restrictions was required to continue his medical leave accommodation. Mr. Bell was aware that failure to provide this certification could result in the denial of his leave extension. Mr. Bell chose not to provide the additional medical certification. When Boeing became aware of his failure to provide the necessary medical certification to justify his continued accommodation, it attempted to contact him to explain his circumstances, and he just laughed in response. Mr. Bell failed to exercise his option to extend his medical leave accommodation, which means that Boeing "could not have fired him for exercising his rights." *Shaffstall v. Old Dominion Freight Line, Inc.*, C18-1656-JCC, 2020 WL 1515621, at *10 (W.D. Wash. Mar. 30, 2020) (granting summary judgement on wrongful discharge claim because plaintiff failed to exercise his rights to take statutory leave when he failed to submit required paperwork).

## C.    Mr. Bell's Disability Discrimination Claim Under the WLAD Fails as a Matter of Law.

To establish discriminatory discharge under the WLAD, Mr. Bell must show he was (1) within a statutorily protected class, (2) discharged by Boeing, and (3) doing satisfactory work. *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 381 (Wash. Ct. App. 2020) (citation omitted). If Mr. Bell successfully establishes those three elements, the burden then shifts to Boeing to "articulate a legitimate, nondiscriminatory reason for the discharge." *Id.* (internal quotation marks

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(No. 2:20-cv-01716 LJK) – 19

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    and citation omitted). Finally, if Boeing meets its burden, Mr. Bell "must produce sufficient

2    evidence showing that the employer's alleged nondiscriminatory reason for the discharge was

3    pretext." *Id.* at 382 (citation omitted).

4          Mr. Bell's employment was terminated for job abandonment and Mr. Bell cannot show

5    that this was pretext for discrimination. Boeing need only "introduce evidence which, taken as

6    true, would permit the conclusion that there was a nondiscriminatory reason for the adverse

7    action." *Id.* at 386 (internal quotation marks and citation omitted). Courts regularly conclude

8    employers have met this burden when they present evidence and arguments akin to those Boeing

9    offers here. For example, in *Mackey*, the appellate court affirmed summary judgment for the

10   employer because it presented evidence Plaintiff was terminated for violating company policies.

11   *Id.* Here, per Boeing's policies, Mr. Bell had exhausted his leave and either needed to report to

12   work or provide additional medical documentation to justify a leave extension. He knew this, yet

13   he did neither.

14         In every communication Mr. Bell received from the Reed Group asking for additional

15   medical documentation to continue his temporary leave benefits, Mr. Bell was warned of the

16   potential consequences of failing to provide the information—denial of his leave and possible

17   termination for job abandonment. *See generally* Loud Decl. ¶ 4, Ex. C. Mr. Bell does not dispute

18   receiving notice from the Reed Group that his disability benefits would terminate on January 20,

19   2019, if he did not support an extension and he admits that he made no efforts to update his medical

20   information after November 2018.

21         Indeed, even after being notified that further leave was denied on February 8, and reminded

22   how to request accommodation, he did nothing. Then when his manager and HR separately called

23   and informed him that after having been absent without authorized leave for over two months, he

24   would have to either return to work or be on an approved leave to avoid being terminated, he just

25   laughed and confirmed he had no intention of returning to work or providing additional medical

26   certification. Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 122:25-123:17, 193:17-194:11), ¶ 25, Ex. X at

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 20

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   TBC-BELL 000697-699; ¶ 26, Ex. Y at TBC-BELL 000212-213. As such, Boeing understood him

2   to have abandoned his role in violation of its policies, and his employment was terminated

3   accordingly.

4        To survive summary judgement, Mr. Bell must "provide 'specific and substantial

5   evidence' of discrimination." *McDaniels v. Group Health Co-op.*, 57 F. Supp. 3d 1300, 1313

6   (W.D. Wash. 2014) (quoting *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir.

7   1996)). He cannot. Plaintiffs may show an employer's reason for terminating them is pretextual

8   by showing, for example, the stated reason for termination "has no basis in fact, it was not really

9   a motivating factor for the decision[,] it lacks a temporal connection to the decision or was not a

10  motivating factor in employment decisions for other employees in the same circumstances."

11  *Mackey*, 459 P.3d at 386 (citation omitted). Again, *Mackey* is instructive. There, Plaintiff did not

12  present any evidence to dispute her employer actually concluded she violated company policy, nor

13  did she produce any evidence that the conclusion was not the actual reason for her termination. *Id.*

14  So too here, Mr. Bell cannot offer any evidence to show Boeing did not actually believe he had

15  abandoned his job or that this was not the actual reason for his termination. "Conclusory

16  allegations, speculation, and unsupported assertions [are] insufficient" to salvage a discrimination

17  claim at this stage in the analysis. *Id.* (citing *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074,

18  1078 (9th Cir. 2003)).

19  **D.    Mr. Bell's Retaliation Claim Fails as a Matter of Law.**

20       To prevail on a retaliation claim, Mr. Bell must show (1) involvement in a protected

21  activity, (2) an adverse employment action; and (3) a causal link between the two. *See Brooks v.*

22  *City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citation omitted); *McElwain v. Boeing Co.*,

23  244 F. Supp. 3d 1093, 1100 (W.D. Wash. 2017) (citing *Daniel v. Boeing Co.*, 764 F. Supp. 2d

24  1233, 1245 (W.D. Wash. 2011)).

25       Mr. Bell alleges Boeing retaliated against him "for his insistence that TBC honor its

26  commitment that he would not have to work the 3rd shift." Dkt. #1-2 at 6. But the WLAD does

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

92412359.7

1   not protect all employee activity. It is not enough to complain about unfair working conditions or

2   adverse employment decisions or even tortious conduct. To prevail, a plaintiff must be opposing

3   what he or she reasonably believed to be discrimination, rather than unfair treatment not tied to a

4   protected characteristic. *See, e.g.*, *Graves v. Dep't of Game*, 887 P.2d 424, 428 (1994) (plaintiff's

5   complaints supervisor was not spending enough time with her or training her sufficiently "were

6   not of sexual discrimination"). Mr. Bell's retaliation claim is facially insufficient for this reason

7   alone.

8       Moreover, Mr. Bell must prove Boeing was aware he was complaining about unlawful

9   discrimination, as opposed to merely complaining about unfair treatment. This requirement is

10  critical because "the concept of retaliation as prohibited by RCW 49.60.210 can only come about

11  by the performance of an intentional act. Retaliatory conduct involves both motive and intent." *E-*

12  *Z Loader Boat Trailers, Inc. v. Travelers Indemnity Co.*, 726 P.2d 439, 443 (1986). That is, an

13  employer cannot form an unlawful retaliatory intent unless it knows the plaintiff has engaged in

14  protected activity. There is no evidence Boeing understood Mr. Bell's complaints about being

15  transferred to third shift to be complaints about unlawful discrimination. Because Bell cannot

16  establish Boeing had the requisite notice he was engaging in protected activity, his retaliation claim

17  should be dismissed.

18      Even if the court accepts Bell's complaints about the shift transfer to constitute protected

19  activity, Mr. Bell's retaliation claim nonetheless fails because he cannot show he was subject to

20  an adverse employment action because of his complaints. A cognizable adverse employment

21  action is one that "is reasonably likely to deter employees from engaging in protected activity."

22  *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). Placing an employee on a medical leave

23  of absence as a disability accommodation cannot be considered an adverse employment action

24  under this standard. Otherwise, anytime an employee disagrees with an otherwise reasonable

25  accommodation, they would be able to bring a retaliation claim alleging that their accommodation

26  was retaliatorily granted, which would be an absurd result.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 22

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Further, Mr. Bell cannot show that he was placed on medical leave in retaliation for

2 complaining about the shift transfer. On the contrary, Mr. Bell affirmatively requested a disability

3 accommodation that would keep him from having to work on third shift. Boeing placed Mr. Bell

4 on medical leave as an accommodation.

5    **E.    Mr. Bell's Breach of Contract Claim Fails as a Matter of Law.**

6    Mr. Bell's breach of contract claim fails because Boeing did not breach any enforceable

7 contractual duty owed to Mr. Bell. To establish his breach of contract claim, Mr. Bell must prove

8 "(1) the existence of a valid contract; (2) a breach of that contract; and (3) resulting damages."

9 *Dries v. Sprinklr, Inc.*, C20-47-MLP, 2020 WL 6119423, at *8 (W.D. Wash. Oct. 16, 2020). "To

10 attach legal liability for breach of contract, the terms of the breached contract must be sufficiently

11 definite." *Quezada v. City of Entiat*, 2:18-CV-118-RMP, 2018 WL 4289327, at *12 (E.D. Wash.

12 Sept. 7, 2018). As in *Quezada*, here Mr. Bell "has not specifically defined the terms of the alleged

13 contract" between himself and Boeing. *Id.*

14    Instead, Mr. Bell appears to rely on his offer letter as the source of the specific contractual

15 obligation Boeing is alleged to have breached. *See* Dkt. # 1-2 at 6 ("Fifth Cause of Action: Breach

16 of Contract. Defendants extended an offer of employment to Andrew that promised him he would

17 be assigned to work the 2nd shift. . . .").[5] The unambiguous language of the offer letter reads:

18           On behalf of The Boeing Company, I am very pleased to extend to
             you a contingent offer of employment for a union-represented
19           position of Machine Repair Mechanic A, . . . with Boeing
             Commercial Airplanes, located in Auburn, Washington. . . . on 2nd
20           shift.

21 Lucht Decl. ¶ 3, Ex. B at TBC-BELL 000005.

22    It is undisputed that Mr. Bell began working for Boeing on April 20, 2018, as a Machine

23 Repair Technician A in Auburn, Washington, on second shift as outlined in his offer letter. Lucht

24 Decl. ¶ 2, Ex. A (Bell Dep. at 190:4-9). Thus, even if Mr. Bell could show that the contingent offer

25

26    _____

     [5] To the extent that Mr. Bell argues that there was an oral contract that Boeing would continue to employ him
     on second shift indefinitely, such a claim would be barred by the Statute of Frauds. *See French v. Sabey Corp.*, 951
     P.2d 260, 265 (1998); RCW 19.36.010.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 23

92412359.7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   letter proved the existence of an enforceable contract, which Boeing denies, he cannot show that

2   Boeing breached any definite term of said contract. Moreover, his offer letter stated the position

3   was "covered by a Collective Bargaining Unit Agreement," which Mr. Bell understood. Lucht

4   Decl. ¶ 3, Ex. B at TBC-BELL 000005-08; Lucht Decl. ¶ 2, Ex. A (Bell Dep. at 165:2-9). The

5   CBA which governed the terms of his employment specifically provides for reassignment and Mr.

6   Bell does not contend that his reassignment to third shift violated the CBA.

7   **F.     Mr. Bell's Request for Declaratory Relief Should be Denied.**

8           Mr. Bell's request for declaratory relief from his repayment obligations under his

9   Relocation Repayment Agreement fails because none of his claims relieve him of his obligations

10  under the unambiguous terms of the agreement. Mr. Bell voluntarily entered into the agreement,

11  and he admits that he was aware of the potential repayment obligations. Lucht Decl. ¶ 2, Ex. A

12  (Bell Dep. at 213:9-16, 272:20-24). The express terms of the agreement require repayment if the

13  recipient's employment is terminated for any reason, other than a reduction of force, within 12

14  months of hire. Lucht Decl. ¶ 10, Ex. I at TBC-BELL 000566. Even if Mr. Bell could establish

15  any of his claims—which he cannot—none of his claims represent a valid defense to the

16  enforceability of the Relocation Repayment Agreement.

17  **V.     CONCLUSION**

18          Boeing respectfully requests the court grant summary judgment and dismiss all of

19  Mr. Bell's claims for the reasons stated above.

20

21  Dated: December 20, 2021          By:  *s/* Julie S. Lucht
                                      By:  *s/* T. Ray Ivey
22                                    Julie S. Lucht, Bar No. 31278
                                      T. Ray Ivey, Bar No. 55683
23                                    **Perkins Coie LLP**
                                      1201 Third Avenue, Suite 4900
24                                    Seattle, Washington 98101-3099
                                      Telephone: 206.359.8000
25                                    Facsimile: 206.359.9000
                                      JLucht@perkinscoie.com
26                                    TIvey@perkinscoie.com

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
(No. 2:20-cv-01716 LJK) – 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

92412359.7

1

## CERTIFICATE OF SERVICE

2

3
    On December 20, 2021, I caused to be served upon the following, at the address stated below, via the method of service indicated, a true and correct copy of the foregoing document.

4

5

6

7

8

J. Roderik Stephens, WSBA #14538    **___**    Via Hand Delivery
The Stephens Law Firm    **___**    Via U.S. Mail, 1st Class,
437 29th St. NE, Suite G, Office C       Postage Prepaid
Puyallup, WA  98372    **X**    Via E-Filing
(253) 863-2525    **___**    Via Overnight Delivery
Rod@stephenslawfirm.com    **___**    Via Facsimile
kathryn@stephenslawfirm.com    **X**    Via Email
**Attorneys for Plaintiff**

9

10
    I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

11

12
    EXECUTED at Seattle, Washington on December 20, 2021.

13

14
                      *s/ Kayani Bituin*
                      Kayani Bituin, Legal Practice Assistant

15

16

17

18

19

20

21

22

23

24

25
CERTIFICATE OF SERVICE
(No. 2:20-cv-01716 LJK)

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000