UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDREW BELL and BECKY BELL, husband and wife,<br><br>                         Plaintiffs,<br>    v.<br><br>THE BOEING COMPANY,<br><br>                         Defendant. | CASE NO. 20-CV-01716-LK<br><br>ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY |

This matter comes before the Court on Defendant Boeing Company's Motion to Exclude Expert Report and Testimony by Dr. Laeeq Shamsuddin, Plaintiff Andrew Bell's Opposition, and Boeing's Motion to Strike and Reply. Dkt. Nos. 21, 27, 31. For the reasons discussed below, the Court denies Boeing's Motion to Strike but grants its Motion to Exclude.

## I.  INTRODUCTION

The Court detailed the extensive background of this case in its Order Granting In Part and Denying in Part Defendant's Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment. Dkt. No. 51. To briefly recap, Plaintiff Andrew Bell brought this action

1   against Boeing, his former employer, alleging several violations of the Washington Law Against

2   Discrimination. *See* Wash. Rev. Code § 49.60.180. The Court has dispensed with every cause of

3   action except for one: Bell's failure to accommodate claim. *See Doe v. Boeing Co.*, 846 P.2d 531,

4   537 (Wash. 1993) ("[E]mployers have an affirmative obligation to reasonably accommodate the

5   sensory, mental, or physical limitations of such employees unless the employer can demonstrate

6   that the accommodation would impose an undue hardship on the conduct of the employer's

7   business.").

8     Bell intends to support this claim with the expert report and testimony of Dr. Laeeq

9   Shamsuddin, a Board-Certified Sleep Medicine Specialist. Dkt. No. 27 at 1. Although Bell never

10  delineates the precise contours of Dr. Shamsuddin's testimony, he appears to suggest that it will

11  center on "the nature and extent of [his] medical condition/disability, including the need for an

12  accommodation." *Id.* at 10. Dr. Shamsuddin's report, which Bell disclosed to Boeing on September

13  20, 2021, is comprised of six paragraphs and spans just one and a half pages. *See* Dkt. No. 22-1 at

14  8–9. Dr. Shamsuddin opines therein that Bell "is likely suffering from Shift Work Disorder

15  Syndrome along with his documented OSA and Idiopathic Hypersomnia"; "that it would not be

16  medically safe for Mr. Bell to work the 3rd shift"; and, therefore, that Boeing "should have provided

17  him with work place accommodation." *Id.* at 9. Dr. Shamsuddin identifies the documents that he

18  reviewed in drawing these conclusions: (1) a "[l]etter from Dr[.] Kardasheva of Virginia Mason

19  related to [Bell's] medical condition"; (2) "[i]ntra office communication from Boeing HR"; (3)

20  "HR paperwork related to FMLA"; (4) a "[h]ome [s]leep study (7/11/2018) and subsequent CPAP

21  orders"; and (5) "[c]linic [n]otes from Dr. Carmen Dohmeier of Guildford Neurologic Associates

22  . . . from 10/10/2018, 11/2/2018, Polysomnography on CPAP . . . on 11/7/2018, MultiSleep

23  Latency Test on 11/8/2018, [and] Clinic Notes on 11/21/2018." *Id.* at 8. The report also briefly

24  details the prevalence of Shift Work Disorder in the United States and defines Obstructive Sleep

Apnea. *Id.* And, in two paragraphs, Dr. Shamsuddin summarizes the factual history of Bell's employment at Boeing, his request for an accommodation, and the sleep testing he underwent. *Id.* at 8–9.

Boeing seeks to exclude Dr. Shamsuddin's report and testimony as unreliable under Federal Rule of Evidence 702 and the criteria established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dkt. No. 21 at 4–7; Dkt. No. 31 at 5–7. Specifically, Boeing attacks Dr. Shamsuddin's report for its lack of citation to authority or published medical studies; lack of scientific foundation or methodology; and reliance on incorrect facts (namely, the mistaken belief that Bell worked third shift at Boeing). Dkt. No. 21 at 2–6. In support of his opposition to Boeing's motion, Bell offers a January 5, 2022 declaration by Dr. Shamsuddin. This seven-page declaration essentially addresses the criticisms Boeing advances in its motion. *See, e.g.*, Dkt. No. 30 at 2 ("I have been informed that the Defendant objected to the opinions [I] made in the report that was provided on September 20, 2021. I prepared this declaration to clarify the factual basis for my opinions."); *id.* at 4 ("It seems that I got the sequence of events out of order when I performed my evaluation of Mr. Bell's medical condition."); *id.* at 6 ("I take issue with the statement of defense counsel that I 'parroted' the reports of the other physicians.").

Dr. Shamsuddin's declaration also extensively expounds on topics either briefly mentioned in, or completely omitted from, his report. For example, he defends his exclusive reliance on clinic notes and other medical records; catalogues and explains the diagnostic testing Bell underwent; explains his agreement with Dr. Dohmeier's diagnoses; discusses at length Shift Workers' Syndrome[1] and its recognition in the medical community; and references four published studies.

---

[1] Dr. Shamsuddin rotates among several variations of what appears to be the same disorder. In his September 20, 2021 report, for example, Dr. Shamsuddin refers to "Shift Work Disorder Syndrome" and "Shift Work Disorder." Dkt. No. 22-1 at 8–9. His January 5, 2022 declaration is even less consistent. There he appears to use "Shift Work Syndrome," "Shift Workers' Syndrome," "Shift Workers Disorder," "Shift Work Disorder (SWD)," and "Shift Workers' Sleep Disorder" interchangeably. Dkt. No. 30 at 3, 5–6.

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY - 3

1  *Id.* at 2–6. Dr. Shamsuddin avows that, at the time he issued his September 20, 2021 opinion, he
2  "was extremely busy in [his] medical practice running the COVID-19 Intensive Care Unit." *Id.* at
3  4. He has since "review[ed] additional depositions and internal employee health documents." *Id.*
4  In the end, though, the factual inaccuracies contained in his September 20, 2021 report "d[id] not
5  alter his medical diagnosis" of Bell. *Id.* Dr. Shamsuddin concludes his declaration with a
6  restatement of his opinion: "Mr. Bell suffers from Shift Workers' Syndrome . . . , Obstructive
7  Sleep Apnea and Idiopathic Hypersomnia," and therefore "has a permanent condition that
8  precludes him from working the 3rd shift." *Id.* at 6. Boeing has moved to strike Dr. Shamsuddin's
9  declaration as an untimely supplemental report.

10               **II.     DISCUSSION**

11       The Court first addresses Boeing's Motion to Strike, then turns to its Motion to Exclude
12  and the parties' dispute over the reliability of Dr. Shamsuddin's proposed testimony.

13       **A.     Motion to Strike**

14       Boeing asks the Court to strike Bell's opposition brief and two supporting declarations.
15  Dkt. No. 31 at 4–5. Boeing contends that these filings are untimely under Local Civil Rule 7(d)(3).
16  Dkt. No. 31 at 4. Boeing's Motion to Exclude, filed on December 20, 2021, was properly noted
17  for Friday, January 7, 2022. Dkt. No. 21 at 1. *See* LCR 7(d)(3). This means that Bell's opposition
18  to the motion was due on Monday, January 3, 2022. *See id*. As Boeing notes, however, Bell did
19  not file his opposition brief and supporting declarations until Wednesday, January 5, 2022—two
20  days late. *See* Dkt. No 27 at 10. Four days after receiving Boeing's reply brief, Bell filed a surreply
21  apologizing for the untimely response, explaining that it was an inadvertent mistake, and asking
22  the Court to "weigh the gravity of the error against the irrevocable and disproportionate detriment
23  to Plaintiffs' claim." Dkt. No. 40 at 1–2.

24

1    "The Court has the discretion to strike untimely pleadings that fail to comply with local
2    rules." *Allstate Indem. Co. v. Lindquist*, No. C20-1508JLR, 2020 WL 7075215, at *1 (W.D. Wash.
3    Dec. 3, 2020); *Reule v. H.O. Seiffert Co.*, No. C08-1591-MJP, 2009 WL 10725375, at *1 (W.D.
4    Wash. May 11, 2009). Although the Court acknowledges that it may summarily strike such
5    pleadings, *see, e.g.*, *Pierson v. Miniat*, No. C21-1317-SKV, 2022 WL 43520, at *1 (W.D. Wash.
6    Jan. 5, 2022); *McDaniel v. B.G.S.00 LLC*, No. C15-05319-JRC, 2016 WL 3198310, at *2 (W.D.
7    Wash. June 9, 2016), usually the moving party must justify that remedy by demonstrating
8    sufficient prejudice from the untimely filing, *see, e.g.*, *Knight v. Wal-Mart Stores, Inc.*, No. C08-
9    5746-RJB, 2009 WL 4544734, at *1 (W.D. Wash. Nov. 25, 2009) (the court "favors resolving
10   cases on their merits where possible," especially "[w]here no prejudice is caused" by counsel's
11   "negligence in failing to carefully read" court rules).

12   Boeing argues that it suffered prejudice from Bell's belated opposition and supporting
13   declarations because it "cut[] [Boeing's] time to prepare a reply in half." Dkt. No. 31 at 4. The
14   untimely filing of these materials violates Local Civil Rule 7, and the Court finds Bell's disregard
15   for the rules unacceptable. However, it declines to strike the untimely materials because it finds
16   the prejudice to Boeing insufficient to warrant that remedy. *See Bates v. State Farm Mut. Auto.*
17   *Ins. Co.*, No. C14-1557-JLR, 2015 WL 11714360, at *2 (W.D. Wash. Oct. 19, 2015) ("The issues
18   raised in State Farm's initial motion are narrow and not particularly complex . . . , and the court
19   finds that State Farm has suffered only minimal prejudice by losing two days of its time to prepare
20   a reply memorandum."). The underlying issue here—the admissibility of Dr. Shamsuddin's report
21   and testimony—is not "particularly complex." And Boeing managed to muster a full six-page reply
22   squarely addressing Bell's counterarguments and identifying deficiencies in Dr. Shamsuddin's
23   declaration. *See* Dkt. No. 31 at 5–9; LCR 7(e)(4). The Court therefore denies Boeing's motion to
24

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO
EXCLUDE EXPERT REPORT AND TESTIMONY - 5

strike the opposition brief and declaration of Mr. Stephens. Dkt. No. 31 at 4–5. The Court addresses the second declaration—Dr. Shamsuddin's—below.

### B. Motion to Exclude

#### 1. Dr. Shamsuddin's January 5, 2022 Declaration

Boeing next contends that, even if the Court does not strike Bell's opposition papers and supporting declarations as untimely, it should at least exclude Dr. Shamsuddin's January 5, 2022 declaration as a "novel expert opinion offered after the deadline and discovery cutoff." Dkt. No. 31 at 7–9. The Court, as the gatekeeper of evidence, is also permitted to evaluate expert testimony *sua sponte* and exclude such testimony where appropriate. *See Jack v. Borg-Warner Morse Tec, LLC*, No. C17-0537-JLR, 2018 WL 4409800, at *13 (W.D. Wash. Sept. 17, 2018) ("A court may raise *sua sponte* the reliability of expert testimony."); *Kirstein v. Parks Corp.*, 159 F.3d 1065, 1067 (7th Cir. 1998) ("We have not required that the *Daubert* inquiry take any specific form and have, in fact, upheld a judge's *sua sponte* consideration of the admissibility of expert testimony."); *United States v. Alatorre*, 222 F.3d 1098, 1103 (9th Cir. 2000).

Dr. Shamsuddin's declaration is in all practical effect a supplemental expert report aimed at remedying the deficiencies in his September 20, 2021 report. As noted above, Dr. Shamsuddin blames his "extremely busy" schedule for the errors in his initial report, and then states that he has since "had a chance to review additional depositions and internal employee health documents." Dkt. No. 30 at 4; *see also* Dkt. No. 27 at 9 ("As noted in the doctor's declaration, due to his duties as a physician running the COVID-19 ICU, he was pressed for time when he prepared his report."). Indeed, Dr. Shamsuddin spends most of his declaration shoring up omissions in his report and countering Boeing's attacks with previously unprovided substantive analysis. *See e.g.*, Dkt. No. 27 at 10 ("Dr. Shamsuddin in his declaration makes it clear that SWD is an accepted condition within the medical community and provides additional citation to authority."). This is a problem.

A party must disclose all expert reports "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). And it "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1)(A). The expert report deadline in this case was September 20, 2021. Dkt. No. 11 at 1. Discovery closed on November 19, 2021. *Id.* Dr. Shamsuddin's declaration is therefore little more than a back-door effort around the Court's discovery deadlines. *See Eno v. Forest River Inc.*, No. C20-706-DWC, 2021 WL 6428636, at *2 (W.D. Wash. July 1, 2021) (expert's declaration submitted after the expert report deadline and in response to defendant's motion to exclude "appeare[d] to be an attempt to cure the Rule 26(a) deficiencies" in expert's report, but declaration was "untimely" and "d[id] not excuse Plaintiff's non-compliance with Rule 26(a)"); *Olson v. Uehara*, No. C13-0782-RSM, 2014 WL 5605048, at *2 (W.D. Wash. Nov. 4, 2014) ("Indeed, a party may not use a supplement to extend the discovery deadline and introduce a new opinion, nor may a party simply use an existing expert's disclosure as a placeholder to spring a supplemental opinion in the eleventh hour." (cleaned up)); *Smith v. Ardew Wood Prods., Ltd.*, No. C07-5641-RJB, 2009 WL 799679, at *1 (W.D. Wash. Mar. 24, 2009) ("Rule 26(e) does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' initial report.").

Where, as here, a party "fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In the words of the Ninth Circuit, Rule 37(c)(1) "gives teeth" to the requirements of Rule 26(a)(2)(B) and affords the district court "particularly wide latitude . . . to issue sanctions" for a party's failure to meet those requirements. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Thus, while "Rule 37(c)(1) is a self-executing, automatic sanction

designed to provide a strong inducement for disclosure," *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (cleaned up), "the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless," *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021).[2]

The Court considers four factors to determine whether violation of a discovery deadline is justified or harmless: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *W. Towboat Co. v. Vigor Marine, LLC*, No. C20-0416-RSM, 2021 WL 2156694, at *1 (W.D. Wash. May 27, 2021) (citing *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010)); *accord Bentley v. Wells Fargo Bank, N.A.*, No. C17-0533-JCC, 2019 WL 1453578, at *3 (W.D. Wash. Apr. 2, 2019).

          a)      *Dr. Shamsuddin's Declaration Prejudiced and Surprised Boeing*

As to the first factor, the Court finds that Boeing suffered prejudice and surprise as a result of Dr. Shamsuddin's belated quasi-supplemental report. Bell filed Dr. Shamsuddin's declaration on January 5, 2022, over two months after the expert disclosure deadline and over a month after the close of discovery. *See Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2005) (holding that if plaintiff was "permitted to disregard the deadline for identifying expert

---

[2] At least one other judge in this district has set forth the following five-part test for assessing the appropriateness of Rule 37's exclusionary sanction: (1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the non-offending party; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Smith*, 2009 WL 799679, at *3 (citing *Wander v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). With respect to the fifth factor, Bell has not argued for a less-severe sanction. *See Merchant*, 993 F.3d at 741 (the party facing exclusion "bears the burden of showing that a sanction other than exclusion is better suited to the circumstances," and "if the noncompliant party fails to move for lesser sanctions, the district court is not required to consider one[.]").

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY - 8

witnesses, the rest of the schedule laid out by the court months in advance . . . would have to have been altered as well," and such "[d]isruption to the schedule of the court and other parties in that manner is not harmless"); *Duhamel v. Washington*, No. C20-0337-RSM-BAT, 2021 WL 1531001, at *1 (W.D. Wash. Apr. 19, 2021) (finding prejudice because "discovery in this case is now closed and dispositive motions have been filed"); *Torgerson v. Leavit*, No. C11-900-RAJ, 2013 WL 12066142, at *1 (W.D. Wash. May 29, 2013) ("[T]he Court finds that defendants' failure is not harmless where the deadline for expert disclosure . . . has long passed, dispositive motions have already been filed, and trial is set [for two months from date of order].").

Indeed, at least one court has found that a violation of the expert report deadline is prejudicial even when discovery is still open and trial is not set. *See Eno*, 2021 WL 6428636, at *3 (excluding expert reports filed after deadline even though discovery remained open and trial was not set because defendant "would have [had] to expend time and money to develop [the expert's] opinions" through depositions and secure rebuttal experts, "which would necessarily extend th[e] case"). Nor does Bell argue that his violation of the disclosure deadline was harmless. This was his burden to shoulder. *Yeti*, 259 F.3d at 1107; *accord Inteum Co., LLC v. Nat'l Univ. of Singapore*, No. C17-1252-JCC, 2019 WL 1282014, at *1 (W.D. Wash. Mar. 20, 2019) ("The party seeking to avoid Rule 37's exclusionary sanction bears the burden of establishing harmlessness.").

        b)    *Boeing Could Not Have Cured the Prejudice Without Substantially Disrupting the Case Schedule*

The Court finds that Boeing may have been able to mitigate or cure the prejudice stemming from Dr. Shamsuddin's declaration, but not without substantially disrupting the case schedule. Bell did not file Dr. Shamsuddin's declaration until January 5, roughly three weeks after the dispositive motion deadline. By the time summary judgment briefing was complete on January 14, 2022, trial was only three months away. Dkt. No. 11 at 1 (setting trial for April 18, 2022). Although

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY - 9

the Court since continued trial to June 6, 2022, Dkt. No. 45 at 2, it is unreasonable to expect Boeing to have countenanced Bell's surprise supplemental expert report by seeking to reopen discovery so late in the game for the purpose of deposing Dr. Shamsuddin.

Furthermore, whatever fault may be attributed to Boeing for not attempting to depose Dr. Shamsuddin on his new opinions is outweighed by the egregious nature of Bell's untimely disclosure. The ability to depose a witness after the close of discovery does not nullify the harm of missing the Court's disclosure deadlines. *See Koho v. Forest Laboratories, Inc.*, No. C05-667-RSL, 2015 WL 11201281, at *6 (W.D. Wash. Mar. 31, 2015) ("[A] goal of 26(a)(2) is to allow parties to prepare for expert depositions and to shorten or decrease the need for expert depositions."); *Ross v. Fred Meyer Stores, Inc.*, No. C09-5285-BHS, 2010 WL 2650524, at *3 (W.D. Wash. July 1, 2010) (because the purpose of the expert report disclosure requirement "is to minimize the amount of deposition time needed, and in many cases avoid the need for the expert deposition altogether," party's "failure to comply with the expert witness report requirement eviscerate[d] the purpose of the rule" and could not "be considered harmless").

    c) *Allowing Dr. Shamsuddin to Supplement His Report with His Declaration Will Likely Disrupt the Remaining Case Schedule and Trial*

As discussed above, the Court finds that permitting Dr. Shamsuddin to supplement his September 20, 2021 report with his subsequent declaration would likely delay the Court's pretrial schedule and, ultimately, the trial date. Such supplementation would at the very least necessitate providing Boeing with a chance to depose Dr. Shamsuddin on his new opinions and an opportunity to file a motion challenging his testimony. That, in turn, would require rescheduling the remainder of the deadlines in this case. *See* Dkt. No. 45 at 1; *see also Wong*, 410 F.3d at 1062 (district court did not abuse its discretion in refusing to permit party to supplement his disclosure where such supplementation would have required altering the schedule set by the court; "[c]ourts set such

schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.").

       d)  *Bell's Violation was Willful*

As for the fourth and final factor, the Court finds that Bell's violation of the expert report deadline was willful. *See R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247 (9th Cir. 2012) (a district court must consider whether the party's noncompliance involved "willfulness, fault, or bad faith" when conducting a harmlessness inquiry under Rule 37(c)(1)). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath* v. *Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994). Here, Bell fails to show that his noncompliance can fairly be attributed to a circumstance or conduct outside his control. He seems to briefly suggest that the unavailability of his treating physician delayed his disclosure of an expert report. *See* Dkt. No. 27 at 2 ("Due to the inability to get Andrew Bell's treating sleep specialist to participate in this proceeding, Plaintiff was left with no other option than to request a review of records by another physician[.]"); *accord* Dkt. No. 29 at 1. Similarly, Dr. Shamsuddin blames the deficiencies in his September 20, 2021 report on COVID-19 exigencies. *See* Dkt. No. 30 at 4 ("At the time I was asked to perform Mr. Bell's chart review and render my opinions based on that review, I was extremely busy in my medical practice running the COVID-19 Intensive Care Unit.").

Bell's inability to retain his treating sleep specialist for litigation is not the kind of intervening conduct or circumstance that defeats a finding of willfulness. Bell had months prior to and during discovery to retain an expert, whether that meant confirming the availability of his treating physician or finding a replacement sleep expert. And surely Bell could have given that expert sufficient time to author an acceptable report. Although the Court is sympathetic to the now-familiar strain that COVID-19 places on medical professionals, again, that is something that Bell

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY - 11

should have accounted for ahead of time. At the very least, Bell could have sought a schedule modification or relief from the expert report deadline. *See* Fed. R. Civ P. 16(b)(4); LCR 7(j), 16(b)(6). But he chose not to do so. *See Yeti*, 259 F.3d at 1106 (party could have but did not ask for an extension of the discovery deadline); *Quevedo v. Trans-Pac. Shipping, Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (district court did not abuse its discretion in excluding belated expert report because the offending party never sought an extension of time).

The Court need not belabor the point any further. Bell's failure to meet the expert report deadline in this case is simply unacceptable. The Court accordingly excludes Dr. Shamsuddin's January 5, 2022 declaration. It will not consider the declaration for purposes of Boeing's Motion to Exclude, and Bell cannot rely on the declaration or any information therein at trial. *See* Fed. R. Civ. P. 37(c)(1).

2. <u>Dr. Shamsuddin's September 20, 2021 Report and Related Testimony</u>

The Court last arrives at Boeing's primary ask: the exclusion of Dr. Shamsuddin's September 20, 2021 report and related testimony as unreliable under Federal Rule of Evidence 702 and the *Daubert* factors. Dkt. No. 21 at 4–7; Dkt. No. 31 at 5–7; *see* Dkt. No. 22-1 at 8–9. As discussed below, the Court agrees with Boeing that Dr. Shamsuddin's proposed testimony lacks sufficient indicia of reliability. It will therefore exclude that testimony.

An expert may testify based on his "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence," provided that the testimony rests on "sufficient facts or data" and "reliable principles and methods," and the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(a)–(d). The Court's role at this stage is that of "gatekeeper," and at the gatekeeping stage the relevant inquiry is limited to whether Dr. Shamsuddin's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. An expert's opinion is reliable when it "has a reliable

basis in the knowledge and experience of the relevant discipline." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) (cleaned up), *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020); *accord Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

In *Daubert*, the Supreme Court supplemented Rule 702's base requirements with optional, non-definitive "general observations" to aid district courts in assessing whether a proffered expert's testimony is reliable. 508 U.S. at 593. These factors include (1) whether the expert's theory can or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; (4) standards; and (5) general acceptance in the expert's field. *Id.* at 593–94; *Koho*, 2015 WL 11201281, at *3. But "[t]hese factors are meant to be helpful, not definitive, and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on the particular circumstances of the particular case." *Pyramid Technologies, Inc. v. Hartford Cas. Ins. Co.*, 752 F.3d 807, 814 (9th Cir. 2014) (cleaned up); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141–42 (1999) (the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case" and the district court has the "same broad latitude when it decides *how* to determine reliability as it enjoys with respect to its ultimate reliability determination").

The Ninth Circuit has repeatedly emphasized that the reliability inquiry is "flexible" and "should be applied with a liberal thrust favoring admission." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 960 (9th Cir. 2021) (cleaned up). When an expert's opinion is "not the junk science Rule 702 was meant to exclude, the interests of justice favor leaving difficult issues in the hands of the jury and relying on the safeguards of the adversary system—vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof—to attack shaky but admissible evidence." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017)

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY - 13

(cleaned up); *see also Pyramid Technologies*, 752 F.3d at 814 (once the expert meets the threshold established by Rule 702, he may testify, and it is up to the jury to assign weight to that testimony). Bell bears the burden of proving by a preponderance of the evidence that Dr. Shamsuddin's testimony is admissible. *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996); *Nay v. BNSF Ry. Co.*, No. C19-5425-BHS-MLP, 2021 WL 5321979, at *4 (W.D. Wash. Nov. 16, 2021).

Even under *Daubert*'s "liberal standard," *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014), Dr. Shamsuddin's report is unreliable and thus inadmissible. The "liberal thrust favoring admission is not without limits," *Hardeman*, 997 F.3d at 960 n.11, and the Court "cannot abdicate its role as gatekeeper" or delegate it to jury, *Estate of Barabin*, 740 F.3d at 464. The Court need not extensively delve into the *Daubert* factors to reach this conclusion. Bell simply fails to show that Dr. Shamsuddin's proposed testimony is "the product of reliable principles and methods," or that Dr. Shamsuddin reliably applied those "principles and methods to the facts of th[is] case." Fed. R. Evid. 702(c)–(d). Indeed, the report does not even meet the threshold requirement of explaining "the basis and reasons" for Dr. Shamsuddin's opinions. Fed. R. Civ. P. 26(a)(2)(B)(i).

Dr. Shamsuddin opines that Bell likely has Shift Work Disorder Syndrome "along with his documented OSA [obstructive sleep apnea] and Idiopathic Hypersomnia," and that "[t]he combination of these three diseases" makes it "not . . . medically safe for Mr. Bell to work the 3rd shift" such that Boeing "should have provided him with work place accommodation." Dkt. No. 22-1 at 9. However, Dr. Shamsuddin does not explain the basis or reasons for any of these three diagnoses or why the three disorders together create a medical risk.

In one sentence, Dr. Shamsuddin asserts that while Shift Work Disorder "is understudied," the "evidence suggests that more than one in five shift workers experience Shift Work Disorder."

1  *Id.* at 8. But he never explains what Shift Work Disorder is, why he believes Bell has it, or how it
2  would affect Bell's work on third shift. To the extent that Dr. Shamsuddin bases his diagnosis of
3  Shift Work Disorder on his assertion that Bell "experienced significant sleepiness that made him
4  [sic] hard to stay awake at work, as well as unsafe to drive home" after "he started working 3rd
5  shift" at Boeing, *id.*, his diagnosis is based on a fiction. It is undisputed that Bell never worked
6  third shift at Boeing. And although Bell testified in his deposition that he could not stay awake
7  when he worked third shift for another employer roughly ten years before he worked for Boeing,
8  Dr. Shamsuddin does not include the deposition among the materials he reviewed. *Id.*

9        With respect to his second diagnosis of obstructive sleep apnea, Dr. Shamsuddin spends a
10 paragraph discussing the condition and its physiological causes, but does not provide any rationale
11 for concluding that Bell has this disorder other than observing that Bell's July 2018 "Home Sleep
12 Study . . . showed severe OSA with an AHI=37.4/hr." *Id.* at 8–9. While it is clear that Dr.
13 Shamsuddin agrees that Bell has obstructive sleep apnea, he does not explain why. The same
14 deficiencies plague his third diagnosis of idiopathic hypersomnia. Dr. Shamsuddin recites the sleep
15 study results, noting that "the patient was presumed [by Dr. Dohmeier] to have Idiopathic
16 Hypersomnia," *id.* at 9, but he never explains the basis for his own opinion that Bell suffers from
17 that disorder.

18       After regurgitating the previous sleep test results and describing the prevalence of Shift
19 Work Disorder without explaining what it is, Dr. Shamsuddin conclusorily opines that Bell is
20 likely suffering from Shift Work Disorder Syndrome, obstructive sleep apnea, and idiopathic
21 hypersomnia. *Id.* He states that the three diseases in combination "make it very difficult for Mr.
22 Bell to maintain a 3rd shift occupation," but then pivots back to just obstructive sleep apnea,
23 cautioning that "significantly higher severity of OSAS during daytime sleep after night shift may
24

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY - 15

intensify unfavorable health effects of OSAS,"[3] and citing to an untitled 2011 periodical from "Sleep Med." in support of the proposition that people with OSAS should avoid nighttime work if the disorder is not "effectively treated." *Id.* Dr. Shamsuddin does not indicate how (if at all) these statements apply to Bell; indeed, there is no indication in his report or elsewhere in the record that Bell suffered from "higher severity of OSAS during daytime sleep after night shift," nor does Dr. Shamsuddin address whether Bell's obstructive sleep apnea is not effectively treated.

Next, Dr. Shamsuddin observes that "[s]leepiness could result in unsafe alertness levels both at work and while driving home," which in turn "could lead to avoidable accidents," "a significant change in quality of life[,] and progression of chronic health conditions." *Id.* Again, Dr. Shamsuddin fails to connect these dots as to Bell; he does not explain why he thinks Bell would be sleepy during third shift work other than his bare assertion that the three disorders "make it very difficult for Bell to maintain a 3rd shift occupation." *Id.* Dr. Shamsuddin finishes this final paragraph of his report by stating that it is "for these reasons" that he believes that "it would not be medically safe for Mr. Bell to work the 3rd shift" and that Boeing "should have provided him with work place accommodation." *Id.*

Noticeably absent from Dr. Shamsuddin's report is any methodology or analysis connecting the facts and data Dr. Shamsuddin reviewed to his conclusions. An expert must bridge the analytic gap with more than bald assertions or his own ipse dixit. *See Provident Life & Accident Ins. Co. v. Fleischer*, 18 Fed. App'x 554, 556 (9th Cir. 2001) (excluding expert's testimony where his report "did little more than baldly state" a conclusion, "offer[ed] absolutely no foundation for the conclusion," and did "not explain what, if any, scientific studies or principles support[ed] that conclusion."); *SQM N. Am. Corp.*, 750 F.3d at 1049 ("It is where expert opinion is 'connected to

---

[3] "OSAS" refers to "obstructive sleep apnea syndrome," but Dr. Shamsuddin never explains this acronym in his report.

ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY - 16

the existing data only by the *ipse dixit* of the expert' that there may be 'too great an analytical gap between the data and the opinion proffered' to support inclusion of the testimony." (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))); *Whisnant v. United States*, No. C03-5121-FDB, 2006 WL 2927732, at *3 (W.D. Wash. Oct. 11, 2006) ("Something doesn't become scientific knowledge just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were derived by the scientific method be deemed conclusive.").

The Court does not question Dr. Shamsuddin's qualifications or suggest that he does not possess sufficient knowledge to offer an opinion on Bell's sleep disorder. The problem is that his report does not articulate a methodological approach or otherwise set forth the scientific procedure that a medical doctor specializing in sleep disorder might apply. *See SQM N. Am. Corp.*, 750 F.3d at 1045 (a proponent of expert testimony "may satisfy [his] burden of establishing that the evidence is scientifically valid by pointing to some objective source to show that the conclusions are based on scientific method, as it is practiced by (at least) a recognized minority of scientists in the field" (cleaned up)). "The question is whether an expert's methodology can be 'challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.'" *Id.* at 1046 (quoting Fed. R. Evid. 702, Advisory Committee's Note to 2000 Amendments). Dr. Shamsuddin's report falls in the latter category.

The report also stands in sharp contrast to the expert testimony that courts have found sufficiently reliable for the jury. *See, e.g.*, *id.* (report "detail[ed] how [the expert] analyzed the relevant data and applied the data to reach his conclusions"); *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998) (doctor "set forth the steps he took in arriving at his conclusion," and his "analogical reasoning was based on objective, verifiable evidence and scientific methodology of the kind traditionally used by rheumatologists."); *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1125 (9th Cir. 1994) (expert opinion was based on medical records, clinical experience, an

epidemiological study, and medical literature); *Dries v. Sprinklr, Inc.*, No. C20-0047-MLP, 2020 WL 7425602, at *4 (W.D. Wash. Dec. 18, 2020) (expert "relied on her specialized knowledge as a vocational expert in applying the facts . . . to the identified factors in her methodology").

True enough, the Court is "a gatekeeper, not a fact finder," *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006), and "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion," *Primiano*, 598 F.3d at 564. *See also Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (a district court may not "exclude opinions merely because they are impeachable"). But here Dr. Shamsuddin's report is so lacking in methodology that the Court must close the gate. *See Kennedy*, 161 F.3d at 1230 (exclusion is appropriate when "too great an analytical gap exists between the existing data and the expert's conclusion").

### III.  CONCLUSION

The Court DENIES Boeing's Motion to Strike, Dkt. No. 31 at 4–5, but GRANTS Boeing's Motion to Exclude, Dkt. No. 21; Dkt. No. 31 at 7–9.

Dated this 22nd day of April, 2022.

*Lauren King*
Lauren King
United States District Judge